Nancy COX, Appellee,

v.

DARDANELLE PUBLIC SCHOOL DIS-
TRICT; Glenn Fugatt, Superintendent
of Schools; and Johnny Dillard, Princi-
pal, Appellants.

No. 84–2575.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 11, 1985.

Decided April 30, 1986.

Rehearing Denied June 11, 1986.

W. Paul Blume, Little Rock, Ark., for appellants.

Clayton Blackstock, Little Rock, Ark., for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

The Dardanelle Public School District and its officials, as individuals, appeal the judgment of the district court,[1] sitting without a jury, that the school district impermissibly failed to renew the contract of appellee, Nancy Cox, in retaliation for speech and conduct protected by the first amendment, in violation of 42 U.S.C. § 1983 (1982). The appellants contend that the district court improperly concluded that appellee's activities were protected by the first amendment. They further contend that the district court erred in finding that the protected activities in which the appellee engaged were the motivating factor in the decision not to renew her teaching contract, and that but for her protected speech, she would have been rehired. The appellants also contend that the district court erred in finding that the district school board did not comply with statutory procedures governing the non-retention of public school teachers. We affirm the judgment of the district court.[2]

Appellee Nancy Cox was first hired by the Dardanelle Public School District to teach eighth grade English at the district's Middle School for the 1976–77 school year. Her employment contract was renewed by the School Board each of the following two years. During the first two years Cox taught at the Middle School, she established a good working relationship with the principal, Ed Bradshaw, who served as her immediate supervisor. Bradshaw gave Cox good evaluations and recommended each year that she be rehired.

At the beginning of the 1979–80 school year, the third year Cox was employed by the School District, appellant John Dillard replaced Ed Bradshaw as principal of the Middle School. During this same school year Cox became more active in the teachers local organization, the Dardanelle Education Association (DEA), and was appointed DEA representative to the Middle School for the 1979–80 school year.

The difficulties between Cox and Dillard were best illustrated by the following factual findings of the district court:

4. Defendant Johnny L. Dillard replaced Ed Bradshaw as Principal of the Dardanelle Middle School before the beginning of the 1979–80 school term. Defendant Dillard implemented several changes in the regulations under which the teachers had performed their duties in previous years. Plaintiff, along with a majority of the other members of the faculty of the Dardanelle Middle School,

---

1. The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

2. Our decision on the appellee's first amendment claim makes it unnecessary for us to consider her pendant state procedural claim.

Upper Building, disagreed with some of defendant Dillard's methods.

5. Plaintiff on numerous occasions spoke out concerning the administration of the educational process at the Dardanelle Middle School, oftentimes in disagreement with defendant Dillard. On November 6, 1979, plaintiff, along with a number of the other faculty members of her school, caused a grievance to be filed with defendant Dillard concerning the educational process in their school. In that grievance, the teachers requested defendant Dillard to meet with them to discuss their dissatisfaction with the educational process then existing. Defendant Dillard instructed the teachers to file individual grievances if they wished to have their concerns addressed by him. Three teachers, Richard Johnson, Maxine Kemp and plaintiff, submitted individual grievances reflecting their names thereon to defendant Dillard. All three of the teachers submitting individual grievances were the victims of job-related sanctions from all the defendants herein. Richard Johnson was terminated in February, 1980, plaintiff was dismissed at the conclusion of the 1979–80 school term, and Maxine Kemp was placed on a probationary status for the 1980–81 school term. None of the other members of the Dardanelle Middle School Upper Building faculty suffered any job-related sanctions during or at the conclusion of the 1979–80 school term.

7. Plaintiff was informed by defendant Fugatt by letter received on or about February 29, 1980, that he was recommending to the Board of Education that her contract not be renewed for the coming school term. Later, on April 1, 1980, plaintiff received a letter from the President of the School Board specifying eleven (11) grounds for the Superintendent's nonrenewal recommendation. A hearing was held before the School Board on April 16 and 23, 1980, to consider the matter of the nonrenewal recommendation as to plaintiff's employment. After hearing considerable evidence from defendants Fugatt and Dillard, as well as plaintiff and other witnesses, the School Board voted on each of the grounds listed by the Board President in his letter to plaintiff and relied upon by defendant Fugatt. Of those eleven (11) charges, the Board voted that four (4) were false, that four (4) were true but not sufficient grounds for nonrenewal, noted that one (1) had been withdrawn by the Board's attorney, and voted that two (2) were true and constituted sufficient grounds relied upon by the Board in dismissing plaintiff were "(1) on August 30, August 31, September 4, September 7, and September 10, Mrs. Cox refused to follow directions in that she signed in for Mr. Johnson.", and "(2) on February 15, Mrs. Cox refused to follow administrative policy in that she allowed her class to be interrupted by a visitor without permission from the Principal."

*Cox v. Dardanelle Public School District,* No. LR–C–80–441, slip op. at 2–4, (E.D.Ark. April 23, 1984).

The district court found that the appellants had dismissed Cox not for alleged insubordination in failing to comply with administrative directives, but because of her continued expressions of disagreement over the educational policies in force in the Middle School.[3] The district court also found that the grounds advanced by the appellants for Cox's renewal were "pretextual and insignificant," *Cox,* slip op. at 4, and further, that but for her criticisms, Cox's contract would have been renewed by the School Board. The court also concluded as a matter of law that Cox's expressions were protected by the first amendment. The court thereupon awarded

3. The district court found that Cox was fired as well because of her association with a fellow teacher, Richard Johnson. Our decision that Cox's expressions were protected conduct, and the sole reason for the nonrenewal of her contract, make it unnecessary for us to review this alternative ground. We note that the parties in the briefs filed with this court mention Cox's association with Johnson only in passing, and direct their constitutional arguments solely to Cox's speech claim.

Cox damages for the wrongful dismissal. The appellants filed the instant appeal.

 Claims by public employees that they have suffered job-related sanctions as a result of speech are considered in accordance with the now familiar analysis set out by the Supreme Court in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). As a threshold matter, a plaintiff must demonstrate that the speech or conduct, which she alleges as the basis of the adverse employment decision, was entitled to constitutional protection; she must then show that this protected conduct was a substantial or motivating factor in the adverse employment decision; the burden then shifts to the employer to show by a preponderance of the evidence that it would have taken the same action absent the employee's protected conduct. *Id.* at 287, 97 S.Ct. at 576.

### A.

Whether a public employee's expressions are constitutionally protected involves a two-step inquiry. *Connick v. Myers*, 461 U.S. 138, 143–47, 103 S.Ct. 1684, 1688–90, 75 L.Ed.2d 708 (1983). Initially, a court must conclude that the employee's speech can be "fairly characterized as constituting speech on a matter of public concern * *." *Id.* at 146, 103 S.Ct. at 1689; if the speech falls within this category, the court must then balance "the interest of the [employee] as a citizen, in commenting upon matters of public concern and the interests of the state, as an employer, in promoting the efficiency of the public service it performs through its employees." *Id.* at 142, 103 S.Ct. at 1687 (quoting *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968).

The district court concluded that Cox's speech, for the most part, was an "expression of her own ideas concerning the educational process in the Dardanelle Middle School ...," *Cox*, slip op. at 4, and therefore related to a matter of public import. Appellants contend that this conclusion is wrong as a matter of law[4] and that appellant's expressions amounted to no more than her "personal objections to employee work rules," Brief of Appellants at 16, and thus, as expressions of private and not public concern, are not entitled to constitutional protection.

 Whether a public employee's expressions relate to a matter of public concern must be considered in light of the "content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48, 103 S.Ct. at 1690 (footnote omitted). The question in each case is whether the employee's expressions can be "fairly characterized as relating to any matter of political, social, or other concern to the community * * *." *Id.* at 146, 103 S.Ct. at 1689. Where a public employee speaks out in public or in private[5] on matters that relate solely to the employee's parochial concerns as an employee, no first amendment interests are at stake. *Id.* at 146, 103 S.Ct. at 1689. The focus is on the role the employee has assumed in advancing the particular expressions: that of a concerned public citizen, informing the public that the state institution is not properly discharging its duties, or engaged in some way in misfeasance, malfeasance or nonfeasance; or merely as an employee, concerned only with internal policies or practices which are of relevance only to the employees of that institution. *See id.* at 143, 147–48, 103 S.Ct. at 1688, 1690.

---

4. "The inquiry into the protected status of speech is one of law, not fact." *Connick*, 461 U.S. at 148 n. 7, 103 S.Ct. at 1690 n. 7; *Roberts v. Van Buren Public Schools*, 773 F.2d 949, 954 (8th Cir.1985).

5. It is clear that an employee's right to speak out on matters of public concern is not forfeited by the choice of a private forum. *Givhan v. Western Consolidated School District*, 439 U.S. 410,

415–16, 99 S.Ct. 693, 696–97, 58 L.Ed.2d 619 (1979). Although the time, place, and manner of the speech are generally irrelevant to the inquiry into the public import of the speech, they may be relevant in striking the balance between the employee's and employer's interests. *Id.* at 415 n. 4, 99 S.Ct. at 696 n. 4; *see infra* p. 674.

Our review of the record convinces us that Cox's speech was composed of more than criticisms of internal personnel policies, but touched on matters of public concern, and was therefore entitled to constitutional protection. To begin with, not all of Cox's speech was directed at Dillard's personnel policies. The very first dispute between Cox and Dillard related to the District's decision to abandon ability grouping of students. The educational theories and practices employed by school administrators is clearly a question of public concern. The questions how we teach the young, what we teach them, and the environment in which we teach them are of the most central concern to every community in the nation. *Cf. Board of Education v. Pico,* 457 U.S. 853, 102 S.Ct. 2799, 73 L.Ed.2d 435 (1982); *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954).

■ Additionally, we believe that much of Cox's speech directed at the school's personnel policies was not motivated solely by employment concerns, but was legitimate criticism of policies and administration which affected the educational function of the school.[6] Cox was critical in her individual grievance, and by proxy, in the general grievance, of the manner in which Dillard dealt with the faculty, and expressed the view that Dillard's administrative style had discouraged teacher input, inhibited teachers' use of different teaching techniques and classroom methods, significantly affected teacher morale at the

school, and affected the students. Plaintiff's Exhibit No. 2; Plaintiff's Exhibit No. 3. Cox's statements on these matters were not the comments of a single employee bearing on issues unique to that employee. *Cf. Connick,* 461 U.S. at 148, 103 S.Ct. at 1690; *Renfroe,* 722 F.2d at 715. Nor were her comments concerned solely with the immediate supervisor-employee relationship between Dillard and the faculty. They obviously touch in great measure upon the ability of Dillard and the faculty to "discharge * * * the public function of education." *Roberts,* 773 F.2d at 956. Cox's comments are clearly attempts to inform Dillard, and ultimately his superiors, that his actions were interfering with the efficient and proper discharge of the crucial responsibilities of the faculty.[7]

■ We therefore conclude that a significant portion of Cox's speech was of public concern. We must now balance appellee's interest in advancing these expressions with the state's legitimate interest in the "effective and efficient fulfillment of its responsibilities to the public." *Connick,* 461 U.S. at 150, 103 S.Ct. at 1691; *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734.

■ An employee's interest in freely commenting on matters of public concern must generally give way to the state's interest in efficiently fulfilling its responsibilities where the employee's speech significantly impairs her ability to perform her duties, disrupts working relationships and harmony among co-workers, or otherwise

---

6. Cox's criticism of the policies requiring teachers to sign in and out and forbidding personal use of the office phones, and her criticism regarding the timing of announcements and messages during the day all bear on internal matters relevant only to the employees of the school, and are not constitutionally protected. *Cf. Knapp v. Whitaker,* 757 F.2d at 827, 840 (7th Cir.1985) (teacher's remarks on classroom assignments and content of evaluations merely internal, personal matters, not protected speech).

7. The Court in *Connick* did not hold that criticism of the way in which one's superior administers the office or institution is always solely a question of internal concern. As Justice Brennan noted in dissent, "It is beyond doubt that personnel decisions that adversely affect disci-

pline and morale may ultimately impair an agency's efficient performance of its duties," and comment on these decisions, therefore, is a matter of public concern as "of interest to persons seeking to develop informed opinions about the manner in which * * * an * * * official charged with managing a vital governmental agency[ ] discharges his responsibilities." 461 U.S. at 163, 103 S.Ct. at 1698 (Brennan, J., dissenting). The majority did not in principle disagree with Justice Brennan's observations, but only as they applied in the particular context—a questionnaire soliciting employees' views primarily on internal policies relating to transfers and office morale, distributed by an employee transferred against her wishes. *Id.* at 148 n. 8, 103 S.Ct. at 1691, n. 8.

impedes the normal operations of the institution. *McGee v. South Pemiscot School District R–V,* 712 F.2d 339, 342 (8th Cir. 1983); *Rookard v. Health & Hospitals Corp.,* 710 F.2d 41, 45 (2d Cir.1983); *see Connick,* 461 U.S. at 151–53, 103 S.Ct. at 1692–93. Where the employee's comments threaten to disrupt or impair close working relationships particularly requiring personal loyalty and confidence, the state must be given an even wider degree of deference. *Connick,* 461 U.S. at 151–52, 103 S.Ct. at 1692; *Pickering,* 391 U.S. at 570, 88 S.Ct. at 1735. Furthermore, while the fact that an employee's comments are made to superiors in private does not strip them of constitutional protection, *Givhan,* 439 U.S. at 415, the state is entitled to consider whether the time, place and manner of the private expression affected or threatened working relationships and the efficient operations of the institution. *Id.* at 415 n. 4, 99 S.Ct. at 696 n. 4.

There is no evidence that Cox's criticisms throughout the year introduced discord into otherwise harmonious relations with her colleagues. To the contrary, the evidence indicates that this dispute was between a majority of the teachers at the Middle School and the principal. Moreover, there is no evidence that Cox's speech affected her teaching performance.[8] Nor is there evidence that Cox willfully disobeyed any directive that affected her teaching duties. *Cf. Patterson v. Masem,* 774 F.2d 251, 257 (8th Cir.1985) (teacher properly terminated where she permitted opposition to administrative decision to interfere with teaching responsibilities); *Nicholson v. Board of Education Torrence Unified School District,* 682 F.2d 858, 865 (9th Cir.1982) (teacher properly terminated for willful refusal to comply with legitimate administrative policies).

■ Nor do we believe that any statements by Cox can fairly be said to have disrupted her relationship with Dillard. The evidence indicates that the primary source of the disruption in their relationship (indeed, the cause of disruption of the relationship between a majority of the faculty and Dillard), was Dillard's implementation and enforcement of the personnel policies, not Cox's speech. *See Monsanto v. Quinn,* 674 F.2d 990, 998–99 (3d Cir.1982). *See also Atcherson v. Siebermann,* 605 F.2d 1058, 1063 (8th Cir.1979). Although we do not intend to minimize the importance of the teacher-principal relationship, *see Nicholson,* 682 F.2d at 864, it is not a "relationship between superior and subordinate * * * of such a personal and intimate nature that certain forms of [ ] criticism of the superior by the subordinate would seriously undermine the effectiveness of the working relationship between them * * *." *Pickering,* 391 U.S. at 570 n. 3, 88 S.Ct. at 1735 n. 3. The teacher-principal relationship is not of such a personal and intimate nature that teachers must be precluded from filing responsible grievances. *See Derrickson v. Board of Education,* 703 F.2d 309, 316 (8th Cir.1983). *Cf. Pickering,* 391 U.S. at 572, 88 S.Ct. at 1736 (case does not present occasion to decide if teachers can be required to follow grievance procedures to submit complaints first to superiors before bringing complaints to public).

■ Finally, there is no allegation that the time, place or manner of appellee's speech aggravated her relationship with Dillard or impeded the normal operation of the school. Cox did not attempt to circumvent the chain of command, *see Foster v. Ripley,* 645 F.2d 1142, 1149 (D.C.1981); nor is there a suggestion that her individual grievance or criticisms throughout the year were intemperate, or antagonistic, *see Na-*

---

**8.** The appellees have not suggested that Cox brought her criticism of Dillard's policies into the classroom. We recognize that a number of the grounds advanced by Dillard and Fugatt for the decision not to renew Cox's contract suggest that Cox's teaching was below acceptable standards. However, there is no suggestion that these putative shortcomings were connected to her protected speech. Furthermore, the School Board found all but one of these charges to be either false or an insufficient ground for nonrenewal, and the district court found these grounds to be pretexts.

*thanson v. United States,* 702 F.2d 162, 166 (8th Cir.1983); *Boehm v. Foster,* 670 F.2d 111, 113 (9th Cir.1982).

### B.

The appellants argue that even if Cox's speech, on balance, was constitutionally protected, it was not the motivating factor in the Board's decision not to renew her contract. They contend that the Board's decision was based on Cox's repeated refusal to comply with proper administrative directives, not her criticism of those directives.

 A public employee generally can be discharged for refusing to follow administrative policies and directives, even those they contend are misguided. *See Nicholson,* 682 F.2d at 865 & n. 9; *Berry v. Bailey,* 726 F.2d 670, 675–76 (11th Cir. 1984). Of the eleven charges listed by the superintendent in his letter to Cox and advanced to the Board, only two were found by the Board to be true and sufficient grounds for non-renewal: Cox's violation of the sign-in policy on several occasions by signing in for a fellow teacher, Richard Johnson; and, her violation of the policy forbidding unauthorized visitors in the classroom.

 Whether the protected conduct of the plaintiff was a substantial or motivating factor in the adverse employment decision is question of fact, *Roberts,* 773 F.2d at 954; *Wheeler v. Mental Health & Mental Retardation Authority,* 752 F.2d 1063, 1069 (5th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 78, 88 L.Ed.2d 64 (1985). Our review is therefore governed by the clearly erroneous standard, Fed.R.Civ.P. 52(a); *see Anderson v. City of Bessemer City,* — U.S. —, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). After considering all the testimony and evidence, the district court concluded that the charges of insubordination were "pretextual and insignificant," *Cox,* slip op.

at 4, advanced by Dillard and Fugatt to retaliate against Cox for her continuing criticisms of the educational process and environment at the Middle School.

 We believe that there is sufficient evidence in the record to support the district court's finding that Cox's speech motivated the Board not to renew her contract. Dillard admitted that Cox's individual grievance likely was a factor in subsequent decisions he made regarding her employment. At least three memoranda Dillard placed in Cox's personnel file, describing actions of Cox which he believed violated administrative policies or were improper, made reference to the grievance and suggested in each case that Cox's actions were not consistent with the criticisms she had levied against him in the grievance. *See* Joint Exhibit of Parties at 174, 175, 183. Furthermore, the district court took explicit notice of the fact that only the three teachers who filed individual grievances were subject that year to job-related sanctions. *Cox,* slip op. at 2. The district court's decision is not clearly erroneous.[9]

### C.

 The appellants also argue that the district court erred in finding that the teachers did not successfully discharge the burden of demonstrating by a preponderance of the evidence that the School Board would have reached the same decision but for Cox's protected conduct. *Cf. Mt. Healthy City Board of Education,* 429 U.S. at 287, 97 S.Ct. at 576. As with the previous question of causation, this is a question of fact, and thus subject to review on the clearly erroneous standard. *See Roberts,* 773 F.2d at 954; *Professional Association of College Educators v. El Paso County Community College District,* 730 F.2d 258, 267 (5th Cir.1984).

There is ample evidence to sustain the district court's finding. The appellants of-

---

**9.** We note, moreover, that neither violation of the administrative policies appears to have been intended as deliberate insubordination. We do not intend to imply that public employees can be sanctioned only for purposeful violations of the rules. However, the rather insignificant nature of the charges here lends support to the

district court's finding that the decision not to renew Cox's contract was based not on her performance as a teacher, but upon her conduct and complaints. *Cf. Monsanto,* 674 F.2d at 1000–01 (employer's claim that employee fired for infractions of work rules rejected where only minor violations).

**676**

fer no reasons other than those advanced by Dillard and Fugatt and considered by the School Board to justify the employment decision. The School Board found only two of the eleven proferred charges sufficient for adverse action, and the district court concluded that these two were mere pretexts and too insignificant to support the allegations. *Cf. Monsanto,* 674 F.2d at 1000–01 (employees' alleged infractions of work rules either not supported by the evidence or too insignificant to support sanction).

■ We also reject appellants' argument that because the School Board members were unaware of Cox's grievance and other criticisms of Dillard's policies, their decision not to renew Cox's contract was not tainted by any impermissible motive. The district court could reasonably conclude that the Board would not have considered an adverse action against Cox had Dillard and Fugatt not advanced these retaliatory charges. *See Professional Association of College Educators,* 730 F.2d at 266.[10] The district court's finding is not clearly erroneous.

---

**10.** A different case might be presented if the employer could show that the decisionmaker was uninfluenced by a recommendation or charges brought by an impermissibly motivated person. *See Professional Association of College Educators,* 730 F.2d at 266 n. 14. There is no suggestion here that the Board did not take account of the recommendations of the principal and the superintendent, or were not influenced by them.