**Doris J. BAUERS, Plaintiff,**

v.

**Bruce C. CORNETT, and John F. Meystrick, Defendants.**

No. 86–806 C (5).

United States District Court, E.D. Missouri, E.D.

May 4, 1987.

Michael P. Bastian, St. Louis, Mo., for plaintiff.

Michael L. Boicourt, Chief Counsel, Litigation Div., Jefferson City, Mo., for defendants.

## MEMORANDUM

LIMBAUGH, District Judge.

This civil action concerns the allegations of Doris J. Bauers, an employee of the Missouri Division of Employment Security (DES), that officials at the Division have prevented her from exercising her rights under the First and Fourteenth Amendments to the United States Constitution. Specifically, Ms. Bauers contends that the officials, Bruce C. Cornett and John F. Meystrick, required her to remove a flyer she had posted in the St. Ann DES branch office and ordered local officials to remove flyers she had mailed to various DES offices in Missouri. Plaintiff claims that defendants' actions violated her First Amendment rights to free speech and association as well as her right to petition the government for redress.

The defendants deny that they violated plaintiff's First Amendment rights. In addition, they claim that if they had not prevented her from disseminating the materials at the DES offices she would have violated the Hatch Act, 5 U.S.C. § 1501 et. seq., and the Missouri State Personnel Law, R.S.Mo. § 36.150.4 (1987 Supp.). Bauers argues, though, that these laws do not prohibit the type of activity the state has regulated here.

Plaintiff's original complaint contained three counts. On April 18, 1986, the Court entered a temporary restraining order which prohibited defendants from interfering with any of Bauers' lobbying activities. This order has continued in force until this date. Before trial, Bauers dismissed Counts II and III, her requests for actual and punitive damages. Under the sole remaining count, the Court must only determine whether defendants violated plaintiff's First Amendment rights and, if so, whether it should enjoin them from taking similar actions in the future. This Memorandum constitutes the Court's findings of fact and conclusions of law for purposes of Fed.R.Civ.P. 52(a).

### I. *Findings of Fact.*

Doris J. Bauers has worked for the Missouri Division of Employment Security since 1951 and in the Division's St. Ann, Missouri office since 1960. She currently holds the title of Claims Supervisor III, a position in the Missouri Merit System. Defendant Bruce C. Cornett is the director of the DES and indirectly supervises the Division's employees, including the plaintiff. Defendant John F. Meystrick is the Assistant Director of Field Operations for the DES. Plaintiff sues the defendants in their individual and official capacities.

Plaintiff Bauers has an active interest in improving the work environment for lower-level employees at DES. She is a member of the International Association of Personnel in Employment Services (IAPES), a nationwide organization, and serves as recording secretary of the Missouri state chapter. The plaintiff also serves as treasurer of an informal group called the DES Lobbyist Committee, a group that lobbies in the Missouri General Assembly for measures favorable to DES employees.

In January 1986, the Committee focused its efforts on obtaining passage of H.B. 1661. This Bill would have given a merit system employee the right to a hearing before his supervisor could transfer him from one office to another. On February 19, 1986, plaintiff produced some flyers which she posted on a bulletin board in the St. Ann office and mailed to other DES offices in Missouri. Plaintiff did not compose, copy or distribute these flyers on state time and did not use state materials.

The document Bauers posted is a request by the Committee for money to reimburse Pete Rodgers, its lobbyist in Jefferson City. The entire text of the document concerns this request, and it ends with the following underscored statement. "We need this money as soon as possible." The document contains only two phrases which even arguably represent statements on behalf of the bill itself, and these phrases are simply background to the plea for money. The Committee contemplated that Rodgers would use some of the money for contributions to various Missouri state legislators as well as for his own expenses.

The administrators of the DES reacted to the flyers with a communication consisting of three documents. In an inter-office communication to all DES local office managers dated March 18, 1986, defendant Meystrick discussed letters he had received from defendant Cornett, his boss, and from Ivan Schraeder, Director of Labor Relations in the Office of Administration. Meystrick noted that "[t]he general policy we are following on this subject is that no solicitations or distributions are to be made by employees on Agency time or on Agency premises regardless of the cause for which the effort is made."

One of the communications referenced in Meystrick's memorandum was a letter he received from Bruce C. Cornett dated March 11, 1986. There, Cornett referred to a memo from Ivan Schraeder, noting that "[i]n keeping with Mr. Schraeder's comments on this subject, please advise whomever is responsible for distributing this communication that the usage of 'DES' is considered improper, and also advise local Office Managers that subject matter of this type should not be distributed or posted in Division facilities."

The letter from Schraeder dated February 28, 1986, which was referenced in and accompanied the other two documents, states, with the exception of its heading, salutation and closing, as follows:

We have just received a copy of what appears to be an intradepartment transmittal, produced and circulated on state time. If this is correct, the employee or employees responsible should be cautioned about the no solicitation/no distribution rule in effect in the state. It is inappropriate for any employee to promote personal causes or programs through the use of state facilities and/or time.

We also note that the organizing committee is called 'DES Lobby Committee.' We believe that the name is an improper use of the Department's name and status, in that the committee may be mistaken for an officially sanctioned group. It is recommended that you meet with the organizers or known leaders of the group to explain the conflict of interest issues that are raised by the use of the current name and the method of circulation used.

It may also be necessary for you [Cornett] to communicate with the local office managers again concerning the no solicitation/no distribution rule in light of the 'DES Lobby Committee' mailing.

[bracketed comment added].

Plaintiff complied with the directive by promptly removing the flyer from the bulletin board at the St. Ann office. Officials

at other branch offices also responded to the directive by removing the materials from their offices. Bauers then called defendant Meystrick to ask about the directive. She claims that he told her that Division officials could not allow the DES Lobbyist Committee to distribute and post materials because an unidentified union would then want to have similar privileges.

In support of their contention that they did not prohibit Bauers' activities because of the flyer's content, the defendants note that the state has a prohibition against solicitation at state offices. Yet, the pertinent guidelines only limit solicitation of state employees by voluntary agencies by requiring those groups to participate in the Missouri State Employee Charitable Campaign. The DES Lobbyist Committee is not a voluntary agency for purposes of the campaign procedures and, therefore, the guidelines do not apply. The defendants assert that notwithstanding the limited reach of the solicitation guidelines, the Division has a general policy against solicitation of all kinds. The exact bounds of this general policy are not clear.

Further, plaintiff argues that despite the ostensible ban, the Division has allowed other groups to approach DES employees seeking money. For example, DES officials often post notices inviting persons to dutch-treat parties for retiring employees. But, these notices do not constitute solicitation of a type similar to the plaintiff's actions. The other instances of solicitation which plaintiff claims the officials have allowed on a selective basis include a letter from Richard Powell, executive secretary of the Governor's Committee on Employment of the Handicapped, asking DES employees to support a fundraising drive to make Ellis Island and the Statue of Liberty accessible to the handicapped. Plaintiff also submitted copies of a communication from defendant Cornett notifying Division employees that they could join the Association of Retired Missouri State Employees (ARMSE) as associate members for a small fee.

Bauers contends that defendants discriminated against her speech based on its con-

tent. She provided copies of documents which the defendants have allowed other persons to place on DES bulletin boards. These items include two documents urging DES employees to join the Association of Retired Missouri State Employees (ARMSE) and to support bills the group had sponsored in the Missouri General Assembly. Plaintiff also provided a copy of the 1986 IAPES Spring Convention Report which discussed H.B. 1496, a bill pending in the Missouri General Assembly during the 1986 session. Her evidence at trial also included a copy of five resolutions passed by the International Executive Board of IAPES concerning issues pending in the United States Congress in April 1985. Finally, plaintiff submitted a computer printout that someone posted on the bulletin board in the St. Ann office. The document concerns a bill which was pending in Congress and related to the "WIN" program. It includes the following statement: "Those states which want to take action in support of the amendment should contact their senators and ask them to contact Mr. Rollins of Senator Kennedy's office."

Even though these items which encouraged political activity occasionally appeared on the bulletin board at the St. Ann DES office, defendants assert that the Division had a strict policy against employees attempting to influence national or state policy. They assert that any lapse in enforcement of this policy—as evidenced, perhaps, in their acquiescence in the distribution of what might be termed solicitous materials—was not due to conscious viewpoint discrimination. They testified that they attempted to enforce the anti-solicitation rule to the best of their ability and in a fair and impartial manner. In an inter-office communication to all division employees dated May 20, 1985, Bruce C. Cornett set forth this policy:

> You are aware of proposals being made at the national level regarding budget cuts that may adversely affect the Division. While this may naturally be of great concern to some, it is important to remember that it is strictly illegal to use Division resources (time, material, post-

age, etc.) in an effort to influence state or federal policy.

Each of you has the right to contact your state or federal legislator, but in order to maintain our credibility and effectiveness as an agency (and to keep yourself out of trouble) you must be extremely sensitive in *not* using the Division's resources in those contacts.

In addition, you cannot use Division resources to contact others for the express purpose of asking them to lobby on behalf of the Division.

Any future abuses of this type will result in appropriate disciplinary action being taken.

Plaintiff did not use DES time or materials when she prepared and distributed the flyers the officials found offensive. She did, however, distribute these materials on state property and she directed her message to her fellow employees. Cornett's statement of policy does not specifically address situations where these factors are the only connections between the challenged activity and state employment.

After the Court entered an order restraining defendants from interfering with plaintiff's lobbying efforts, Bauers renewed her activities on behalf of the Committee. She posted a memo addressed to all DES employees on May 15, 1986. It contains a brief discussion of the history of the group's lobbying efforts and an entreaty to Division employees to lobby to improve their workplace. However, as with the earlier document which defendants ordered plaintiff to remove, the main thrust of the two-page document is a request for funds to pay the group's lobbyist. Bayers included any portion of the document which might possibly constitute advocacy of a point of view for background purposes only. The writer of the document intended to solicit funds, not advocate ideas.

## II. *Conclusions of Law.*

The Court has subject matter jurisdiction of this federal civil rights action pursuant to 28 U.S. §§ 1331 and 1343(3), 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

■ Given the content of the flyer plaintiff posted on February 18, 1986 and the defendants' directives, the Court must determine whether defendants violated plaintiff's rights by ordering her to discontinue her efforts to solicit money from other DES employees and to cease using the acronym "DES." The Court has already found as a matter of fact that the document plaintiff posted on February 18, 1986 did not contain any expressive language other than a request for funds. However, since the defendants have expressed an intent to restrict the employees' ability to express their opinions on pending legislation by limiting "distributions" the Court must consider whether injunctive relief is appropriate.

### A. *Hatch Act.*

The Hatch Act, 5 U.S.C. § 1502(a)(2), states, in pertinent part,

(a) A State or local officer or employee may not—

(2) directly or indirectly coerce, attempt to coerce, command, or advise a State or local officer or employee to pay, lend, or contribute anything of value to a party, committee, organization, agency, or person for political purposes;

*See also* 5 C.F.R. 151.121(b). The parties agree that the activities of the Missouri Division of Employment Security are partially funded by the federal government. *See* Federal Unemployment Tax Act, 26 U.S.C. § 3301 *et seq.*. Plaintiff Bauers is a state employee for purposes of the Act, 5 U.S.C. § 1501(4) and 5 C.F.R. § 151.101(d), and solicitation of money to reimburse a paid lobbyist—especially since the Committee contemplated that he would use some of the funds for political contributions—represents political activity for purposes of the Act.[1] Consequently, plaintiff's at-

---

**1.** In support of her contention that the Hatch Act does not prohibit her from engaging in

non-partisan political activity, plaintiff cites 5 U.S.C. § 7326. While this section does allow a

tempts to solicit money from other DES employees on behalf of the DES Lobbyist Committee fell squarely within the prohibitions of the Act.

The existence of plaintiff's solicitation activities could have endangered the Missouri Division of Employment Security's federal funding. 5 U.S.C. § 1506. In restricting the plaintiff's solicitation, then, the defendants acted in accordance with and not contrary to federal statutory and constitutional law. *United Public Works of America v. Mitchell,* 330 U.S. 75, 94–104, 67 S.Ct. 556, 566–571, 91 L.Ed. 754 (1947); *Oklahoma v. United States Civil Service Commission,* 330 U.S. 127, 142, 67 S.Ct. 544, 552, 91 L.Ed. 794 (1947) (Hatch Act is constitutional). The Court notes that the Hatch Act would not have prohibited plaintiff from simply expressing her views on H.B. 1661 in an appropriate forum. *See* 5 U.S.C. § 1502(b) and 5 C.F.R. § 151.111(a). However, Bauers expressed no message in the flyers other than a request for funds.[2]

### B. *First Amendment.*

The Hatch Act required the defendants to prohibit the plaintiff's solicitation activities. But, since the Act does not preclude the simple expression of ideas, the Court must determine whether plaintiff had the right under the First Amendment to use the "DES" moniker. Defendants have expressed a clear intent to prohibit the Committee from using this designation and to limit speech in the DES offices generally.

The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech ... or the right of the people ... to petition the Government for a redress of grievances." This provision applies to the states through incorpo-

ration in the Due Process Clause of the Fourteenth Amendment. *United Mine Workers v. Illinois Bar Ass'n,* 389 U.S. 217, 221–22 n. 4, 88 S.Ct. 353, 356 n. 4, 19 L.Ed.2d 426 (1967), *citing, New York Times Co. v. Sullivan,* 376 U.S. 254, 276–77, 84 S.Ct. 710, 723–24, 11 L.Ed.2d 686 (1964). While Bauers purports to invoke three nominally separate First Amendment rights in claiming the right to use "DES," these constitutional protections are "cut from the same cloth" and do not require separate analyses. *McDonald v. Smith,* 472 U.S. 479, 105 S.Ct. 2787, 2789, 86 L.Ed.2d 384 (1985), *Wayte v. U.S.,* 470 U.S. 598, 105 S.Ct. 1524, 1533 n. 11, 84 L.Ed.2d 547 (1985); *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 911–15, 102 S.Ct. 3409, 3424–26, 73 L.Ed.2d 1215 (1982); and *Smith v. Arkansas State Highway Employees, Local 315,* 441 U.S. 463, 465, 99 S.Ct. 1826, 1828, 60 L.Ed.2d 360 (1978).

While the parties' memoranda focus on whether the DES offices are public, limited public, or non-public forums, *see e.g., Perry Education Ass'n. v. Perry Local Educators' Ass'n.,* 460 U.S. 26, 37, 44–53, 103 S.Ct. 948, 954–59, 74 L.Ed.2d 794 (1982) and *Cornelius v. NAACP Legal Defense & Education Fund,* 473 U.S. 788, 105 S.Ct. 3439, 3446–52, 87 L.Ed.2d 567 (1985), these issues have only tangential relevance to a public employee's contention that the State has infringed her First Amendment rights. The seminal cases in this area are *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) and *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

In *Pickering,* the Supreme Court set forth a two-part analysis a court must use when determining whether a restriction on

---

covered person to participate in an activity concerning a "question which is not specifically identified with a national or State political party," 5 U.S.C. § 7326(2), it applies to employees in the federal executive branch. 5 U.S.C. § 7301. Unlike this cited provision which applies to federal executive branch employees, the Hatch Act, 5 U.S.C. § 1501 *et seq.,* which applies to the plaintiff, prohibits covered state employees from soliciting money "for political purposes." 5 U.S.C. § 1502(a)(2). The Hatch Act, then, proscribes both partisan and non-partisan

political activity, a broader area of conduct than 5 U.S.C. § 7326 covers. Plaintiff does not argue that this difference in coverage violates her substantive equal protection rights.

**2.** The Court also notes that plaintiff's solicitation activities violated the Missouri Personnel Law, R.S.Mo. § 36.150.4 (1987 supp.), which prohibits essentially the same conduct as the Hatch Act.

a public employee's speech conflicts with the First Amendment. The Court must first determine whether the suppressed expression relates to a matter of substantial public concern. 391 U.S. at 571–72, 88 S.Ct. at 1736. If so, the speech is protected by the First Amendment and the Court must then proceed to the second stage of the analysis, a comparison of the competing interests of the state in regulating the speech and the employee in expressing her views. *Id.* at 568, 88 S.Ct. at 1734; *see also Connick v. Myers,* 461 U.S. at 143, 103 S.Ct. at 1688.

### 1. *"Public Concern."*

The Court must first determine whether the plaintiff's use of the initials "DES" in the context of her lobbying efforts constitutes speech on a matter of public concern. *Id.* at 146, 103 S.Ct. at 1689. In the context of commercial speech, the Supreme Court has held that use of a name can be speech for purposes of the First Amendment. *Friedman v. Rogers,* 440 U.S. 1, 8, 99 S.Ct. 887, 893, 59 L.Ed.2d 100 (1978) (Texas State Optical ("TSO"), a trade name, is protected commercial speech). Whether this speech relates to a matter of public concern, though, requires a careful analysis of its "content, form, and context ... as revealed by the whole record." *Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690; *Roberts v. Van Buren Public Schools,* 773 F.2d 949, 955 (8th Cir.1985).

In *Connick,* the Supreme Court drew a line between those employment controversies which concern matters of public interest and those which are of a purely personal interest to the speaker. Specifically, the Court noted that

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Id.,* 461 U.S. at 147, 103 S.Ct. at 1690. In drawing this line "the question ... is whether the employee's expressions can be 'fairly characterized as relating to any matter of political, social, or other concern to the community.'" *Id.* at 146, 103 S.Ct. at 1688; *see also Cox v. Dardanelle Public School District,* 790 F.2d 668, 672 (1986).

■ Defendants might have a respectable argument that Bauers and the Committee had only their own "parochial concerns" as employees in mind in carrying out their lobbying activities and, therefore, their use of the acronym did not constitute speech relating to matters of public concern. *See Cox,* 790 F.2d at 672 (speech "concerned only with internal policies or practices which are of relevance only to the employees of that institution" not matters of public concern). But, the defendants' directives prohibited the plaintiff and the lobbyist committee from using the acronym DES not only within the Division's offices but for all purposes. Since the plaintiff used the name to express the message that she represented employees at the Division on matters pending in the Missouri General Assembly, her speech related to a matter of public concern. *See Patteson v. Johnson,* 787 F.2d 1245, 1248 (8th Cir.1986) (testimony of deputy state auditor before legislative committee relating to pending legislation concerned a matter of substantial public concern).

### 2. *Pickering Balance.*

Since the Court has determined that the plaintiff's use of the designation "DES" constitutes speech on a matter of substantial concern, the inquiry shifts to the second half of the *Pickering* analysis. The Court must balance Bauers' interest in using the name "DES" against "the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734; *Roberts,* 773 F.2d at 954. The United States Court of Appeals for the Eighth Circuit has delineated a number of factors a court should consider when arriving at this balance, including

(1) the need for harmony in the office or work place;

(2) whether the government's responsibilities require a close working relationship to exist between the plaintiff and co-workers when the speech in question has caused or could cause the relationship to deteriorate;

(3) the time, manner and place of the speech;

(4) the context in which the dispute arises;

(5) the degree of public interest in the speech; and

(6) whether the speech impeded the employee's ability to perform his or her duties.

*Germann v. City of Kansas City,* 776 F.2d 761, 764 (8th Cir.1985); *Roberts,* 773 F.2d at 954; and *Bowman v. Pulaski County Special School District,* 723 F.2d 640, 644 (8th Cir.1983). Consideration of these factors requires a flexible approach, and the weight the Court should give to any one factor varies with the circumstances of the case. *Germann,* 776 F.2d at 764, *citing, Egger v. Phillips,* 710 F.2d 292, 319 (7th Cir.1983), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983).

Most of these factors concern the effect of employees' speech on the State's ability to maintain peaceful and effective offices. Here, the plaintiff's use of "DES" did not cause any great consternation within the Division offices. She did not interfere with other employees' ability to carry-out their responsibilities. But, the proper functioning of state offices requires more than just smooth intra-office personal relationships and, therefore, the Court must consider the impact of the speech on the operation of the Division as a whole.

The precise aspect of plaintiff's use of the term "DES" which makes it a matter of substantial public concern, that she purports to speak for employees of the Division of Employment Security on matters pending before the Missouri General Assembly, requires a finding that the interests of the State outweigh those of the plaintiff and her committee. The State has a strong and valid interest in preventing legislators and the general public from developing an incorrect impression that the DES Lobbyist Committee speaks on behalf of the Division, or even a majority of its employees. This interest outweighs the plaintiff's right to use the designation since the committee could easily use a different name which would convey the message that the committee speaks for some Division employees while eliminating the perception and image problems created by use of the current label. The Court finds, then, that the Division officials did not violate plaintiff's constitutional rights by prohibiting the use of the acronym "DES" in the name of the lobbying committee.

This *Pickering* analysis would apply to any speech by Division employees concerning matters pending in the Missouri General Assembly. The defendants have expressed an inclination to restrict the employees' rights to speak about pending legislation. Since plaintiff did not attempt to express any message in the challenged flyers other than a solicitation of funds and the use of the DES acronym, this inclination does not entitle the plaintiff to declaratory relief. Further, the Court cannot enjoin the defendants from enforcing this prohibition against pure expression since the *Pickering* analysis depends strictly on the facts and circumstances of each situation. *Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690. Consequently, the Court cannot use overbreadth analysis to determine whether this policy might infringe on any attempts by plaintiff or other DES employees to express their views in the future. *See City Council v. Taxpayers for Vincent,* 466 U.S. 789, 104 S.Ct. 2118, 2130, 80 L.Ed.2d 772 (1984); *Secretary of State of Maryland v. Joseph H. Munson Co.,* 467 U.S. 947, 104 S.Ct. 2839, 2847–50, 81 L.Ed.2d 786 (1984); and *Broaderick v. Oklahoma,* 413 U.S. 601, 611–13, 93 S.Ct. 2908, 2915–16, 37 L.Ed.2d 830 (1973) (overbreadth doctrine is "manifestly strong medicine" and should apply only in clear-cut cases of substantially overbroad restrictions on speech).

### III. *Conclusion.*

The defendants prohibited plaintiff from soliciting money from her fellow employees

and from using the acronym "DES" in the name of a lobbying group. The Hatch Act, 5 U.S.C. § 1501 *et seq.*, prohibits state employees whose employment is connected with federally-funded programs from soliciting funds for use in political activities and, therefore, the defendants properly prohibited this conduct. The defendants' restrictions against the use of the acronym did not violate plaintiff's constitutional rights. The interests of the Division in preventing the General Assembly and the public from developing false impressions outweigh those of plaintiff and the committee in using the label "DES" in the name of their group. The defendants did not restrict plaintiff's speech in favor of the H.B. 1661 since the flyer they ordered her to remove did not contain any component of advocacy. Although the Court cannot award injunctive relief prohibiting defendants from limiting the employees' free speech rights, in some situations application of the policy might violate these rights.

### ORDER

In accordance with the Memorandum filed today,

IT IS HEREBY ORDERED that judgment is entered in favor of defendants Bruce C. Cornett and John F. Meystrick and against plaintiff Doris J. Bauers on the merits on Count I of plaintiff's complaint.

IT IS FURTHER ORDERED that the temporary restraining order entered on April 18, 1986, is DISSOLVED.