Mark MUMFORD, Appellant,

v.

Herbert GODFRIED, Thomas D. Gallo-
way, Patricia B. Swan, Martin Jischke,
Marvin Pomerantz, Marvin Berenstein,
Thomas Dorr, John Fitzgibbon, Betty
Jean Furgerson, Elizabeth Hatch, Melis-
sa Johnson, John Tyrrell, Mary
Williams, Appellees.

No. 94–2772.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 14, 1994.

Decided April 17, 1995.

in which the district court (1) dismissed his claims of tortious interference with contract and tortious interference with prospective business advantage, *Mumford v. Godfried,* No. 4–92–10530 (S.D.Iowa Nov. 23, 1992) (failure to state a claim); (2) dismissed his claim that defendants violated his Fourteenth Amendment right to due process, *id.* (Feb. 7, 1994) (partial summary judgment); and (3) dismissed his claim that defendants violated his First Amendment right to free speech. *Id.* (June 14, 1994) (summary judgment). For reversal, Mumford argues that the district court erred in holding that (1) defendants are immune from liability on his tort claims under Iowa state law; (2) he had no right to due process because he lacked a property interest; and (3) his speech was not a matter of public concern and therefore not protected under the First Amendment. For the reasons discussed below, we reverse the district court's summary judgment dismissal of Mumford's First Amendment claim, affirm on the remaining issues, and remand for further proceedings consistent with this opinion.

Anthony F. Renzo, Des Moines, IA, argued, for appellant.

Steven K. Young, Asst. Atty. Gen., argued. Also appearing on the brief was Gordon E. Allen, Asst. Atty. Gen., for appellee.

Before McMILLIAN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and SHAW,* District Judge.

McMILLIAN, Circuit Judge.

Mark Mumford, a former nontenured faculty member in the Department of Architecture (the department), College of Design, at Iowa State University (ISU), brought this civil rights action in the United States District Court for the Southern District of Iowa against members of the University's faculty and administration (defendants), alleging that he was discharged in violation of his constitutional rights and Iowa common law. Mumford appeals from three separate orders

## Background

On August 21, 1983, Mumford was appointed to a temporary position on the ISU faculty. The position was to expire on May 20, 1984, unless renewed. For two consecutive years his temporary appointment was renewed, extending the appointment to May 20, 1986. In February of 1986, Mumford entered into an agreement with ISU for a two-year probationary appointment, to expire May 20, 1988. His probationary contract was renewed for a second two-year term, ending on May 20, 1990. The probationary appointment was to be automatically renewed for another two years unless notice to the contrary was given by May 20, 1991. His probationary appointment did automatically renew for another two years, thus extending his employment to May of 1992.

On October 8, 1990, ISU adopted a document entitled "Procedures Governing the Status of Long–Term Non–Tenure Track

---

Faculty [at] Iowa State University." Pursuant to these written procedures, persons who, as of that date, had been on temporary or adjunct appointment for more than seven consecutive years would be considered to have a continuous adjunct appointment, subject to termination only for cause.

In early 1991, Mumford was denied tenure, and his probationary appointment was affirmatively terminated. Thus, his employment with ISU ended on May 20, 1992.

Mumford alleges that, during his employment at ISU, he was openly critical of what he considered to be unsound teaching and administrative practices within the department. For example, he alleges that he criticized the department for maintaining too close a relationship with the local architectural business community. He allegedly complained that the business community exercised undue influence over the curriculum and education at ISU. He further alleges that he expressed the view that this relationship and undue influence were potentially unethical because the business community was motivated by financial pursuits rather than the academic interests of the students and ISU. He claims that he was terminated because of his open criticisms of the department.

Mumford brought this action in federal district court, pursuant to 42 U.S.C. §§ 1983 and 1988, and Iowa common law, seeking reinstatement with tenure to his faculty position and damages. The district court dismissed all of Mumford's claims. *Mumford v. Godfried,* No. 4–92–10530 (S.D.Iowa Nov. 23, 1992); *id.* (Feb. 7, 1994); *id.* (June 14, 1994). This appeal followed.

## Discussion

### Dismissal of Tort Claims

Mumford appeals the dismissal of his state common law claims of tortious interference with contract and tortious interference with prospective business advantage on grounds that the state has waived its sovereign immunity for these claims or, in the alternative, on grounds that state sovereign immunity does not extend to these claims against defendants individually. The district court dismissed

Mumford's state common law claims on grounds that defendants are immune from suit and thus the court lacked subject matter jurisdiction. Slip op. at 3–5 (Nov. 23, 1992).

 Under the Iowa Tort Claims Act (Act), Iowa Code Ann. § 669.1.24 (West Supp.1994), the state of Iowa has waived its sovereign immunity by allowing certain claims for damages to be brought against the state or its employees for acts or omissions within the scope of the employees' office or employment. The Act provides, however, that this waiver of sovereign immunity "shall not apply with respect to any claim against the state, to ... [a]ny claim arising out of ... interference with contract rights." *Id.* § 669.14(4). This exception for claims arising out of interference with contract rights includes claims of tortious interference with contract and tortious interference with business advantage. *See North v. State,* 400 N.W.2d 566, 569–70 (Iowa 1987). Moreover, "[e]mployees of the state are not personally liable for any claim which is exempted under section 669.14." Iowa Code Ann. § 669.23. The district court therefore correctly concluded that it lacked subject matter jurisdiction as to Mumford's common law tort claims. Slip op. at 3–4 (Nov. 23, 1992) (citing *Lewis v. State,* 256 N.W.2d 181, 192 (Iowa 1977) (if a statutory exception applies, the court lacks subject matter jurisdiction and the claim must be dismissed)). Accordingly, we affirm the district court's dismissal of Mumford's common law claims of tortious interference with contract and tortious interference with prospective business advantage.

### Dismissal of Due Process Claim

Mumford also appeals the dismissal of his Fourteenth Amendment claim that he was discharged in violation of his right to due process. The district court granted summary judgment in favor of defendants on this claim on grounds that "Mumford did not have de facto tenure and did not have a property interest which gave him an expectation of reemployment. There is no constitutional right to due process if a protected property interest is lacking." Slip op. at 10 (Feb. 7, 1994).

We review a grant of summary judgment de novo. The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir.1992); *St. Paul Fire & Marine Ins. Co. v. FDIC*, 968 F.2d 695, 699 (8th Cir.1992). Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Crain v. Board of Police Comm'rs*, 920 F.2d 1402, 1405–06 (8th Cir.1990).

Mumford concedes that he has no property interest in continued employment at ISU. However, he maintains that he "has a property interest in having the Defendants follow their own mandatory procedures when they make tenure and employment decisions." Brief for Appellant at 13. In other words, Mumford suggests that a property interest was created by the specific mandatory procedures adopted by ISU, despite the general absence of a property interest where the employment is under a temporary or probationary appointment.

It is well-established that a nontenured teacher in a state or public school is entitled to procedural due process only if administrative action deprives the teacher of an interest in liberty or an interest in property. *Raposa v. Meade Sch. Dist. 46–1*, 790 F.2d 1349, 1353 (8th Cir.1983) (citing *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (*Roth*); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Clark v. Mann*, 562 F.2d 1104 (8th Cir.1977); *Cato v. Collins*, 539 F.2d 656 (8th Cir.1976); *Buhr v. Buffalo Pub. Sch. Dist. No. 38*, 509 F.2d 1196 (8th Cir.1974)). In *Roth*, however, the Supreme Court suggested that a property interest might result from "a University rule or policy that secure[s an] interest in reemployment or that create[s] any legitimate claim to it." 408 U.S. at 578, 92 S.Ct. at 2710.

In the present case, at the time of Mumford's termination, ISU had adopted the Procedures Governing the Status of Long-Term Non–Tenure Track Faculty, which granted de facto tenure status to faculty members who, as of October 8, 1990, had been on temporary or adjunct appointment for more than seven consecutive years, subject to termination only for cause. The district court concluded, however, that Mumford did not qualify for such de facto tenure status at the time of his termination because, as a probationary faculty member, he was not "on temporary or adjunct appointment" as of October 8, 1990, nor had he been on such appointment for the requisite seven years. *See* slip op. at 9–10 (Feb. 7, 1994). Thus, no property interest could be inferred from ISU's mandatory procedures. We agree.

On appeal, Mumford focuses on mandatory language in the ISU Handbook regarding other procedures to be followed by each department in making tenure decisions. Brief for Appellant at 12. Based upon this mandatory language, he argues, ISU's written rules governing tenure decisions "constitute an integral part of the contractual structure defining the employment relationship and, thus constitute a valid contract." *Id.* at 15. Citing *Campbell v. City of Champaign*, 940 F.2d 1111 (7th Cir.1991) (*Campbell*) for support, he argues that "since he has a contractual right to have certain procedures followed, he also has a property interest in those procedures themselves." Brief for Appellant at 12. We reject Mumford's argument, however, for the simple reason that a contractual right to have certain procedures followed does *not* create a property interest in the procedures themselves. *See, e.g., Campbell*, 940 F.2d at 1113 ("a contract which merely creates a right to specified procedures does not create an entitlement upon which a claim of deprivation of property without due process of law can be founded.... To bring a case within the orbit of the property concept there must be a substantive entitlement."). Thus, upon careful de novo review, we hold that there is no genuine dispute suggesting that an ISU rule

or policy secured an interest in or legitimate claim to Mumford's re-employment. Mumford has no protected property interest in the present case. We therefore affirm the district court's summary judgment dismissal of Mumford's due process claim.

### Dismissal of First Amendment Claim

Mumford also appeals the dismissal of his First Amendment claim that he was discharged in violation of his right to free speech. The district court granted summary judgment in favor of defendants on this claim on grounds that the speech at issue was not protected under the First Amendment because it was not upon a matter of public concern, as required by *Connick v. Myers*, 461 U.S. 138, 143, 103 S.Ct. 1684, 1688, 75 L.Ed.2d 708 (1983) (*Connick*). Specifically, the district court held that, when Mumford criticized certain administrative practices within the department to other members of the faculty, he "could only have been speaking as an employee rather than a concerned citizen." Slip op. at 6 (June 14, 1994). The district court thus granted defendants' motion for summary judgment on grounds that "Mumford has failed to create a genuine issue of material fact regarding whether his speech was protected." Slip op. at 7 (June 14, 1994). We disagree.

■ "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48, 103 S.Ct. at 1690. "The inquiry into the protected status of speech is one of law, not fact." *Id.* at 148 n. 7, 103 S.Ct. at 1690 n. 7. Thus, we review the district court's conclusion of law de novo. In so doing, we are also guided by our own interpretation of the "public concern" requirement in *Connick*, as follows.

Where a public employee speaks out in public or in private on matters that relate solely to the employee's parochial concerns as an employee, no first amendment interests are at stake.... The focus is on the role the employee has assumed in advancing the particular expressions: that of a concerned public citizen, informing the public that the state institution is not properly discharging its duties, or engaged in some way in misfeasance, malfeasance or nonfeasance; or merely as an employee, concerned only with internal policies or practices which are of relevance only to the employees of that institution.

*Cox v. Dardanelle*, 790 F.2d 668, 672 (8th Cir.1986) (*Cox*) (footnote and citations omitted).

In viewing the evidence in the light most favorable to Mumford, we assume—as did the district court—the truth of Mumford's answers to defendants' interrogatories regarding alleged statements he made criticizing certain policies of his department. Mumford's answers to defendants' interrogatories include the following.

I questioned the relationship between the "academic" and "practice" communities in a fundamental way. I criticized the unjustified link between Des Moines practitioners and architectural education at Iowa State University, and more generally challenged the undue influence which the business community had on architectural curriculum and education at Iowa State University. I expressed the view that this link and undue influence was potentially unethical as it made the architectural curriculum the captive of a particular group of businessmen who are motivated by their own financial interests instead of a concern for the overall academic interests of the students and the University.... These statements were oral and were made on numerous occasions beginning in 1985 until my employment was terminated.... These statements were made to other faculty members, at different times.[1]

---

1. Mumford provided information about the individuals to whom he made these statements and the context in which they were made within the department. He also alleged that he made similar statements to individuals outside the department, but failed to provide information about the individuals to whom they were made or the context in which they were made outside of the department. Thus, the district court found that this latter allegation, regarding statements to outsiders, was insufficient to survive summary judgment because "[n]o specific allegations have

The district court reasoned that Mumford's speech could not be viewed as speech on a public issue if it was only expressed to his colleagues. Slip op. at 6 (June 14, 1994). In its reasoning, the district court relied upon *Bausworth v. Hazelwood Sch. Dist.*, 986 F.2d 1197, 1198 (8th Cir.1993) (*Bausworth*). The district court interpreted *Bausworth* to require that the speaker intend his or her speech to reach a public audience, either directly or indirectly, in order for it to be upon a matter of public concern and thus protected under the First Amendment. This interpretation of *Bausworth* unduly narrows the meaning of "public concern" as used in *Connick*.

The discussion of the law in *Bausworth* must be viewed in light of the facts to which the law was applied. In *Bausworth*, the plaintiff alleged that she was terminated from her position as a public school bus driver in retaliation for engaging in protected speech concerning the school district's decision to charge parents with field trip transportation costs. 986 F.2d at 1198. Her role in this controversy, however, was limited to serving as an intermediary, relaying messages and information between concerned parents and school officials. Thus, in determining that summary judgment was correctly granted in favor of the school district, this court reasoned

> Bausworth did not speak in her role as a citizen. Bausworth received a question from a student's parent, repeated the question to her superior, received the superior's response, and repeated the answer to the parent. Although it turned out that the content of Bausworth's speech was a matter of concern to the parent, the speech's form and context show Bausworth conveyed the speech in the course of acting as a school district employee. Bausworth engaged in nothing more than a job-related chore to get information for a student's parent. Bausworth neither espoused a personal opinion that the charge was incor-

rect nor sought to make a public issue of any school district mistake.

*Id.* at 1199. In other words, the plaintiff's role as messenger was no more protected by the First Amendment than if she had physically delivered the information in writing back and forth between the concerned parents and the school officials. It thus becomes clear why this court explained in *Bausworth*, "[i]n making our examination, we focus on the employee's role in *conveying* the speech rather than the public's interest in the speech's topic." *Id.* at 1198 (emphasis added).

By contrast to the plaintiff in *Bausworth*, Mumford was not merely conveying information on behalf of other parties; he was espousing his personal opinion. Moreover, when we focus on the role that Mumford assumed in advancing his opinion, the facts suggest that he was acting as a concerned public citizen speaking on a matter of public interest, not that he spoke "merely as an employee, concerned only with internal policies or practices which were of relevance only to the employees" of ISU. *Cox*, 790 F.2d at 672. In other words, his speech was not "upon matters only of personal interest." *Connick*, 461 U.S. at 147, 103 S.Ct. at 1690. Rather, it concerned a matter which can be "fairly considered as relating to [a] matter of . . . concern to the community." *Id.* at 146, 103 S.Ct. at 1690. Finally, even if his speech had been directed only to other members of the ISU faculty, that fact alone was insufficient to exclude Mumford's speech from First Amendment protection on summary judgment. As the Supreme Court explained in *Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 415–16, 99 S.Ct. 693, 696–97, 58 L.Ed.2d 619 (1979):

> The First Amendment forbids abridgement of the "freedom of speech." Neither the Amendment itself nor our decisions indicate that this freedom is lost to the public employee who arranges to communicate privately with his [or her] employer rather than to spread his [or her] views

been made which demonstrate that the criticisms of the department were made to the public in such a manner that the statements could be considered a matter of public concern." Slip op. at 7 (June 14, 1994). We decline to address the adequacy of Mumford's allegations to establish a

genuine factual issue as to whether or to what extent these statements to outsiders were actually made because he sufficiently established that statements upon matters of public concern were made to other faculty members.

before the public. We decline to adopt such a view of the First Amendment.

*See also Cox,* 790 F.2d at 672 n. 5 ("[i]t is clear that an employee's right to speak out on matters of public concern is not forfeited by the choice of a private forum"); *Roberts v. Van Buren Pub. Sch.,* 773 F.2d 949, 955 (8th Cir.1985) (public nature of subject of speech is not negated by the fact that employees chose to communicate their concerns privately); *accord Tao v. Freeh,* 27 F.3d 635, 639–41 (D.C.Cir.1994) (reversing grant of summary judgment for employer where speech touched upon issue of public concern, even though it involved an individual personnel dispute and was not made public).

In sum, we hold, upon de novo review, that the district court erred in determining as a matter of law that Mumford's speech was not protected under the First Amendment. We emphasize that our review of the district court's disposition of Mumford's free speech claim is limited to the district court's legal conclusion that Mumford's speech was not on a matter of public concern. Because the district court erred on this issue, we reverse the district court's summary judgment dismissal of Mumford's First Amendment claim.

The judgment of the district court is affirmed in part and reversed in part and the case is remanded for further proceedings consistent with this opinion.