Doris **EVANS, Elise Nance, Flora Long-mire, Dorothy Robinson, James H. Lee, and Roosevelt Harris, Jr., Plaintiffs,**

v.

**The CITY OF INDIANOLA, MISSISSIPPI, Defendant.**

**No. GC89–192–B–O.**

United States District Court, N.D. Mississippi, Greenville Division.

Nov. 20, 1991.

Elizabeth L. Gilchrist, Jackson, Miss., for plaintiffs.

W. Thomas Siler, Jr., Louise Harrell, Phelps Dunbar Firm, Jackson, Miss., for defendant.

## MEMORANDUM OPINION

BIGGERS, District Judge.

This cause comes before the court on the defendant's motions for summary judgment. The court has duly considered the parties' memoranda and exhibits and is ready to rule on the motions.

## FACTS

Plaintiffs Evans, Nance, Longmire and Robinson, former radio dispatchers of the Indianola Police Department, and plaintiffs Lee and Harris, former police officers of the Indianola Police Department, brought this action pursuant to 42 U.S.C. § 1983 against the City of Indianola, Mississippi for wrongful discharge in violation of their First Amendment and Fourteenth Amendment rights. The plaintiffs did not oppose the motions for summary judgment as to their claim for termination without due process under the Fourteenth Amendment and the pretrial order does not include such claim. The only claim before the court is the violation of the plaintiffs' First Amendment right to free speech.

The following facts are undisputed. Plaintiffs Evans, Nance, Longmire, Robinson and Lee were involved with other police department employees in an effort to remove the police chief from office. Matters concerning the police department were covered by newspapers in Indianola and Memphis, Tennessee and by local television stations. Plaintiffs Lee and Harris were quoted by the press. During a meeting of the Indianola Mayor and Board of Aldermen on March 6, 1989, attorney Carver Randle requested the removal of Police Chief Tami Scrivner on behalf of Evans, Nance, Longmire, Robinson, Lee and other police department employees. A motion was made to terminate Scrivner but was not seconded. On March 15, 1989 police department employees were called to a meeting by the mayor and asked the following questions:

1. "Will you support and work with the Chief of Police as designated by the Mayor and Board of Aldermen?" and

2. "Will you comply with the orders, regulations, and policies established by the Mayor and Board of Aldermen governing the Indianola Police Department?"

Plaintiffs Evans, Nance and Longmire left the meeting before being asked or responding to the two questions. Lee declined to answer. Plaintiffs Robinson and Harris were separately asked the two questions by the mayor; it is undisputed that Robinson declined to answer the question regarding the police chief. According to his deposition testimony, Harris declined to answer the mayor's questions, explaining that he

had previously made his statement in the local newspaper that he and the police chief "get along just fine." As assistant police chief, Harris did not participate in the efforts to oust Scrivner, but was quoted in the Memphis newspaper: "If I could [sympathize with the police officers' grievances], I would."

On March 27, 1989 the mayor and board of aldermen met in executive session and reconvened in open session to announce that plaintiffs Evans, Nance, Longmire, Robinson and Lee were terminated and that Harris was demoted from the rank of major and the position of assistant police chief to the rank of corporal. After a number of absences, Harris resigned on April 28, 1989, claiming that the city had constructively discharged him. At the time of termination, Lee held the rank of sergeant. The reason articulated by the defendant for the termination of the plaintiff radio dispatchers was primarily "rank insubordination." The reasons articulated by the defendant for Lee's termination were primarily "rank insubordination and violation of the Indianola Police Department Code of Conduct." The defendant's articulated reasons for Harris' demotion were insubordination and eavesdropping on and interrupting a board of aldermen meeting by speaking in a "harsh manner," deemed to be conduct unbecoming a police officer.

Two community meetings were held on March 16 and March 20, 1989. The local newspaper reported that, during the March 16 meeting, attorney Randle, retained by Evans, Nance, Longmire, Robinson, Lee and other employees, criticized the mayor and board of aldermen for refusing to accept the police chief's resignation in February, 1989, and their handling of problems in the police department. Longmire testified in her deposition that Randle discussed the tension among the officers and lack of job security and asked the community to become involved since the police officers' job performance affected the community. Lee testified in his deposition that Randle addressed the lack of trust and breakdown in the department. According to his deposition testimony, during the second community meeting, plaintiff Lee complained of the board's failure to accept the police chief's resignation, lack of job security, impaired job performance of police department employees "because we're watching each other" and the resulting "poor condition for the citizens." A local newspaper article stated that Lee mentioned his demotion by Police Chief Scrivner in 1988 and erroneously complained that no officer had been promoted under Scrivner. Plaintiffs Nance, Longmire and Robinson signed a petition to retain Randle to oust Scrivner and attended the March 6 board of aldermen meeting and/or community meetings. None of the plaintiff dispatchers spoke during any meetings. Plaintiff Evans signed the petition but did not attend any meetings.

## LAW

■ Whether the plaintiffs' speech is protected by the First Amendment is a question of law. *Dodds v. Childers,* 933 F.2d 271, 273 & n. 1 (5th Cir.1991); (citing *Rankin v. McPherson,* 483 U.S. 378, 386 n. 9, 107 S.Ct. 2891, 2898 n. 9, 97 L.Ed.2d 315, 325 n. 9 (1987)). The Supreme Court has established that the plaintiff must first prove that his speech involved "a matter of public concern," i.e., "relating to any matter of political, social, or other concern to the community." *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708, 719 (1983). The public concern requirement eliminates "employee complaints over internal office affairs." *Id.* at 149, 103 S.Ct. at 1691, 75 L.Ed.2d at 721. The court must consider "the content, form, and context" of the speech in question. *Id.* at 147–48, 103 S.Ct. at 1690, 75 L.Ed.2d at 720.

The plaintiffs concede that concerns of the police chief's handling of internal personnel matters—job security and the effect of disciplinary policies on each employee's job—do not involve public concern. The plaintiffs argue that their concerns of unfair and unequal disciplinary measures that are sometimes racially discriminatory and the internal spying by off-duty officers on behalf of the police chief do involve public concern.

In the pretrial order and in their memoranda in opposition to the motions, the plaintiffs allege that one of their reasons for seeking to oust the police chief was his racially disparate treatment of employees in the disciplinary process. The defendant objects that the charge of racial discrimination is raised for the first time in opposition to the motions. Since there is no such allegation in the complaint and no motion to amend the complaint was filed, the issue is not properly before the court as part of the speech in question. Even assuming *arguendo* that the allegation in the pretrial order is proper, the court notes that, as quoted in the local newspaper, attorney Randle stated during the first community meeting that "this is not a racial issue." The same newspaper article reported that plaintiff Harris, a black officer, had been promoted to assistant police chief under Scrivner. Both black and white employees joined in the effort to oust Scrivner. There is no evidence that racial disparity was a concern communicated by the plaintiffs or their attorney to anyone outside the group of employees seeking to oust Scrivner. In *Dodds v. Childers*, an instructor in a cosmetology program at a community college complained about the status of the Board of Trustee President's relative as a cosmetology instructor-trainee although the college had no formal instructor-training program in cosmetology. 933 F.2d 271, 272 (5th Cir.1991). The court found that the content of Dodds' speech did not establish that it involved a matter of public concern:

> While she may have privately considered creating a program for Bolden to be a misuse of public funds, she expressed this belief only after filing suit. Retrospective embellishment cannot transform personal grievances into matters of public concern.

*Id.* at 274. In an action in which a surgeon wrote letters to his superiors consisting of personal grievances against co-workers and administrators and criticisms of individuals' isolated acts, the court noted:

> Although Dr. Davis has raised the issue of racial discrimination in his equal protection claim against the hospital, none of his letters made any charges of racially discriminatory policies and practices or otherwise raised matters of public concern. . . .

*Davis v. West Community Hospital*, 755 F.2d 455, 461 (5th Cir.1985).

It is well settled that freedom of speech is not lost "to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public." *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 415, 99 S.Ct. 693, 697, 58 L.Ed.2d 619, 625 (1979), *quoted in Thompson v. City of Starkville*, 901 F.2d 456, 466 (5th Cir.1990). The plaintiff teacher in *Givhan* privately communicated to the principal her criticism that the school district's policies were racially discriminatory and in *Thompson*, a former city police officer communicated grievances to his superiors instead of the public and helped fellow employees to do the same. Neither attorney Randle nor the plaintiff police officers, complained about racial discrimination to the police chief, the mayor, the aldermen or the public. Therefore, the court finds that any racial concern was not part of the content of the speech in issue.

The plaintiffs' complaints regarding discipline and spying were publicized in community meetings and press coverage. The Fifth Circuit has held that "the publicization of the speech at issue, appropriately viewed, is simply another factor to be weighed in analyzing whether [the] alleged speech addressed matters of public concern." *Thompson*, 901 F.2d at 466. Focusing solely on an employee's efforts to alert the public runs counter to "the Supreme Court's directive that the content, form, and context of the speech must all be considered." *Id.* at 466 (quoting *Kurtz v. Vickrey*, 855 F.2d 723, 727 (11th Cir.1988)). Accordingly, the public nature of the plaintiffs' speech does not conclusively establish that it can "be fairly characterized as constituting speech on a matter of public concern." *See Connick*, 461 U.S. at 146, 103 S.Ct. at 1690. A public employee cannot transform grievances regarding internal department operations into matters of pub-

lic concern by resorting to a public forum. *Cox v. Dardanelle Public School District,* 790 F.2d 668, 672 (8th Cir.1986) ("[w]here a public employee speaks out in public or in private on matters that relate solely to the employee's parochial concerns as an employee, no first amendment interests are at stake").

■■■ To trigger constitutional protection, the speech "must have been made primarily as a citizen rather than as an employee." *Dodds,* 933 F.2d at 273. Therefore, the employee's primary motivation is relevant to the issue of public concern. *Id.* Since the employee must speak "predominantly" as a citizen to invoke the First Amendment, "[a]ll speech arising from 'mixed motives' ... is not automatically protected." *Id.* In an action in which daycare center employees submitted grievances to the executive director primarily complaining of the supervisor's favoritism, the court found that complaints about an employee's carrying a gun to the center and use of corporal punishment in violation of the rules were expressed in terms of favoritism "as a matter of employer equality, not as a matter of public safety." *Moore v. Mississippi Valley State University,* 871 F.2d 545, 551 (5th Cir.1989). The Fifth Circuit has explained:

> Because almost anything that occurs within a public agency could be of concern to the public, we do not focus on the inherent interest or importance of the matters discussed by the employee.

*Terrell v. University of Texas System Police,* 792 F.2d 1360, 1362 (5th Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987), *quoted in Dodds,* 933 F.2d at 273. In *Dodds* the plaintiff argued that she raised issues of public concern regarding "nepotism, favoritism, and misallocation of public funds in creating a special program for one student." 933 F.2d at 274. The court found that the plaintiff was primarily concerned with the effect of the complained of favoritism on her own employment and that her protest about the creation of jobs " 'based on personal gain and political expediency' arose in reference to her fear that Bolden was be-

ing groomed to take her job." *Id.* In the instant cause the court finds that the plaintiffs' complaints about unfair and unequal discipline reflect predominantly their concern about the security of their jobs and working conditions and thus do not rise to the level of public concern.

In an action brought by a discharged city police officer, the court found that his written grievance regarding uneven application of promotion requirements and his job ratings "focuses largely on matters of personal interest" but that his oral complaints and aid to fellow officers in filing grievances regarding improper promotions of officers who committed " 'acts of dishonesty and misconduct includ[ing] such matters as having extra-marital affairs while on duty, mistreatment of black persons, and theft of confiscated property' address far more than one employee's dissatisfaction with the status quo or his own lot." *Thompson,* 901 F.2d at 457, 462–63. Such egregious misconduct within the police department was not a concern communicated by the plaintiffs in the instant cause.

■■ The alleged spying by off-duty officers on behalf of the police chief was complained of in terms of low morale, distrust among fellow officers and lack of support from the police chief which impaired the efficient operation of the department. In *Connick v. Myers,* a discharged assistant district attorney protested to her supervisors about her transfer and drafted and distributed a questionnaire among fellow attorneys regarding "office transfer policy, office morale, the need for a grievance committee, the level of confidence in supervisors, and whether employees felt pressured to work in political campaigns." 461 U.S. at 141, 103 S.Ct. at 1687, 75 L.Ed.2d at 716. The district attorney informed the plaintiff that she was being terminated for her refusal to accept the transfer and insubordination in distributing the questionnaire. *Id.* The Court held that the question concerning pressure "to work in political campaigns on behalf of office supported candidates ... is a matter of interest to the community." *Id.* at 149, 103 S.Ct. at 1691, 75 L.Ed.2d at 721. However, the Court

found that the remaining questions are not "of public import in evaluating the performance of the District Attorney as an elected official:"

> While discipline and morale in the workplace are related to an agency's efficient performance of its duties, the focus of Myers' questions is not to evaluate the performance of the office but rather to gather ammunition for another round of controversy with her superiors. These questions reflect one employee's dissatisfaction with a transfer and an attempt to turn that displeasure into a cause cèlèbre.

*Id.* at 148, 103 S.Ct. at 1691, 75 L.Ed.2d at 721.

In spite of the public form of the speech in the instant cause, the court finds that the plaintiffs did not primarily seek to inform the public that the police department was not efficiently discharging its governmental responsibilities in protecting citizens. *See Ferrara v. Mills,* 781 F.2d 1508, 1516 (11th Cir.1986) ("a public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run"). It is undisputed that all of the plaintiffs, except Harris, were openly engaged in an effort by 22 employees to remove the police chief from office. Even Harris, as well as the other plaintiffs, declined to answer the mayor's question regarding support for the police chief, and the local newspaper reported support among Indianola residents of the "efforts to oust Police Chief Tami Scrivner." The plaintiffs' complaints were first communicated to the mayor and board of alderman in the context of attorney Randle's request on behalf of police department employees for Scrivner's removal. Officer Lee testified in his deposition that after the board of aldermen refused to terminate Scrivner he, along with other employees, sought "public help," and that his employment in the police department remained his primary motivation. Harris testified in his deposition that he was concerned with numerous officers' complaints to him of low morale. The court finds that Lee and Harris spoke primarily as employees rather than as citizens.

### CONCLUSION

For the foregoing reasons, the court finds that there are no genuine issues of material fact as to whether the plaintiff police officers' or Attorney Randle's speech addressed matters of public concern. Considered in their entire context, content and form, the employees' complaints, as communicated by Lee and Randle, are not protected as a matter of law by the First Amendment. Therefore, it is unnecessary for the court to determine whether plaintiff Harris was constructively discharged and whether the plaintiff dispatchers engaged in expressive conduct for purposes of the First Amendment. Accordingly, the motions for summary judgment as to the plaintiff dispatchers and the plaintiff police officers should be granted.