Tim POTTER, Plaintiff,

v.

ARKANSAS GAME & FISH COMMISSION, et al., Defendants.

No. LR–C–93–27.

United States District Court, E.D. Arkansas, W.D.

Dec. 8, 1993.

Marcia Barnes, Little Rock, Ark., for plaintiff.

Charles W. Reynolds, Little Rock, Ark., for defendant.

Paul Douglas Mays, Little Rock, Ark., for defendant.

## OPINION

WILSON, District Judge.

### I. *Facts*

The plaintiff brought this suit under 28 U.S.C. § 1343(3) and (4) and 42 U.S.C. § 1983, alleging that defendants violated his exercise of free speech rights. Defendants have moved for summary judgment on the grounds that plaintiff's speech was not protected by the First Amendment. The following facts are not in dispute:

Mr. Potter was formerly an employee of the Arkansas Game & Fish Commission. Potter became involved in disagreements with his superiors over his job evaluations of David Herman, a lower-level employee of the Commission who was under Potter's supervision. Herman and Potter were close personal friends. The Commission gave Potter two subpar job evaluations in 1991, and on the day he received the second negative evaluation he went to Commissioner Hal Hunnicutt to reiterate his complaints concerning internal policies of the Commission. Potter presented several complaints to Hunnicutt: he discussed his own subpar evaluation, stated that he had received low performance marks because he did not give Herman low evaluations, and contended that there was a general problem of low morale in the Game & Fish Commission. He also alleged that his primary supervisor was too inexperienced to hold his position, and he criticized the selection process of the Wildlife Officer of the Year. The Commission subsequently held an administrative hearing concerning Potter's charges, and as a result of this investigation Commission officials ordered a demotion and transfer of plaintiff. He then resigned in May, 1992.

### II. *First Amendment analysis of Connick v. Myers*

■ Whether a public employee's speech is protected by the First Amendment requires a two-step judicial inquiry. *Shands v. City of Kennett,* 993 F.2d 1337, 1342 (8th Cir.1993). The threshold issue is whether the employee's speech can be "fairly characterized as constituting speech on a matter of public concern." *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). If the speech addresses a matter of public concern, then the court must balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern, and the interests of the state, as an employer, in promoting the efficiency of the public services it performs through its employees."

*Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). If the speech is not a matter of public concern, the court does not reach the second step of the inquiry. *Bausworth v. Hazelwood School District,* 986 F.2d 1197 (8th Cir.1993).

▋ To establish that a public employee's speech is protected by the First Amendment, the employee must make a threshold showing that the speech addressed a matter of public concern, that is, a matter of "political, social or other concern to the community." *Connick,* 461 U.S. at 143, 146, 103 S.Ct. at 1688, 1689; *Shands,* at 1343. In determining whether the speech dealt with a matter of public concern, the court focuses on the "content, form, and context of a given statement, as determined by the whole record." *Connick,* 461 U.S. at 147–148, 103 S.Ct. at 1690–1691. The Eighth Circuit has held that "where a public employee speaks out in public or in private on matters that relate solely to the employee's parochial concerns as an employee, no First Amendment interests are at stake." *Cox v. Dardanelle Public School District,* 790 F.2d 668 (8th Cir.1986). The Supreme Court has emphasized that "absent highly unusual circumstances, a federal court is not the appropriate forum for reviewing a public employer's reaction to an employee's speech when the employee did not speak as a citizen on a matter of public concern." *Connick,* 461 U.S. at 147, 103 S.Ct. at 1690.

## III. *Summary judgment*

▋ The inquiry into the protected status of the speech is a question of law, *Connick,* 461 U.S. at 148 n. 7, 103 S.Ct. at 1690 n. 7, and thus is readily susceptible to summary judgment disposition. *Pearson v. Macon–Bibb County Hospital Auth.,* 952 F.2d 1274 (11th Cir.1992); *Bausworth v. Hazelwood School District,* 986 F.2d 1197 (8th Cir.1993). Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart,* 813 F.2d 874 (8th Cir.1987); Fed.R.Civ.P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Eighth Circuit has set out the burdens of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.,* 862 F.2d 1338 (8th Cir.1988):

> The burden on the party moving for summary judgment is only to demonstrate, *i.e.,* "to point out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted. *Id.* at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.,* 838 F.2d 268, 273–274 (8th Cir. 1988).

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has emphasized that Rule 56 must be construed with due regard not only for the rights of people asserting claims and defenses "that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by

the rule, prior to trial, that the claims and defenses have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## IV. *Plaintiff's speech was not a "matter of public concern"*

■ In applying these legal principles to the present case, it is clear that Potter was fundamentally concerned with his own subpar job evaluations and his personal dispute with his supervisors at the Arkansas Game & Fish Commission. Regarding the "content" of the speech under the *Connick* analysis, Potter's expression focused on his lack of trust in his supervisors and questions of morale within the agency. Potter's speech constituted a discussion of internal office policy that was of concern only to employees of the Arkansas Game & Fish Commission and to Potter personally, and the content of his speech was not a matter of public concern.

Moreover, an examination of the context and the forum in which plaintiff chose to advance his remarks clearly indicates that Potter was conveying his discontent about his own personal problems within the agency. The crucial speech in this case took place in the context of Potter's decision to go directly to a commissioner on Sept. 9, 1992 to object immediately after he had received a second negative performance evaluation. Potter showed the evaluation to the commissioner in a conversation in which he discussed his supervisors' criticism of his work, and also stressed his other objections to Commission personnel policies and his allegations of morale problems. There is no factual dispute regarding the impetus for plaintiff's communication to the commissioner: Potter acknowledged in his deposition that his reason for bringing his complaints to Commissioner Hal Hunnicutt on Sept. 9, 1992 was his subpar job evaluation received that day.

The personal motivation of his comments is further revealed by his choice of forum: he made these criticisms in private communications within the agency, and never attempted to contact the media about the disagreements at the Commission. In focusing on the employee's role in advancing the speech, courts consider "whether the employee attempted to communicate the speech to the public at large and the employee's motivation in speaking." *Deremo v. Watkins*, 939 F.2d 908 (11th Cir.1991); *Bausworth*, at 1199; *Connick*, 461 U.S. at 148, 103 S.Ct. at 1689. Potter's case is vastly different from the public employee in *Pickering*, where the Supreme Court held that a high school teacher who published a newspaper article criticizing the allocation of school funding "and the superintendent's methods of informing, or preventing the informing of, the school district's taxpayers of the real reasons why additional tax revenues were being sought for the schools ... [addressed] a matter of legitimate public concern" upon which "free and open debate is vital to informed decision-making by the electorate." *Pickering*, 391 U.S. at 571–572, 88 S.Ct. at 1736–1737. After his second evaluation, Potter filed an administrative grievance within the Game & Fish Commission stating that his personal job appraisal was too harsh. His complaints were restricted to commentary inside the agency's internal domain. He did not communicate his complaints to the general public, again demonstrating that he was speaking as an employee worried about his job evaluations, not as a citizen speaking on matters of general import to the community.

Plaintiff cites *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979) in contending that expression that is advanced privately in the internal processes of a public agency can still be a matter of public concern. But Potter's case is clearly different from *Givhan*, in which the Supreme Court ruled that the public employee's speech was protected although she chose to communicate her views privately; in *Givhan*, the Court stressed that "Mrs. Givhan's right to protest racial discrimination—a matter inherently of public concern—is not forfeited by her choice of a private forum." *Connick*, 461 U.S. at 148, 103 S.Ct. at 1691, citing *Givhan*, 439 U.S. at 415–416, 99 S.Ct. at 696–697. *Givhan* is also distinguished from *Potter* because Givhan was not speaking in the context of a personal employment dispute, but in the context of objecting to allegedly racially discriminatory policies of the School District.

*Id.*, 461 U.S. at 146, 148 n. 8, 103 S.Ct. at 1689, 1691 n. 8. Both the content of Potter's expression concerning internal office matters and the context of his personal dispute over job evaluations differed sharply from Mrs. Givhan's speech.

Plaintiff argues that there are factual issues regarding whether Potter violated the proper channels of authority and thus disrupted harmony in the workplace; but these issues are relevant only in the second phase of the judicial inquiry—the balancing of interests between employee and public agency. *Roberts v. Van Buren Public Schools*, 773 F.2d 949, 954 (8th Cir.1985). Since his speech was not a matter of public concern, the court does not reach the issue of whether the plaintiff disrupted harmony in the workplace and other issues that become relevant only in the second, balancing phase of the judicial inquiry.

Regarding the crucial foundational analysis of whether the speech was of public concern, even if all of plaintiff's factual allegations are taken as true, Potter's expression still does not meet the threshold requirement. Potter placed great emphasis in his speech on alleged problems of low morale within the agency. Even assuming that the Commission did suffer from morale problems, such problems by themselves are not sufficient to make Potter's complaints a matter of public concern. In *Connick*, the Supreme Court addressed the issue whether the First Amendment prevents "the discharge of a state employee for circulating a questionnaire concerning internal office affairs." *Connick*, 461 U.S. at 140, 103 S.Ct. at 1686. In discussing a questionnaire that addressed office morale, internal office policy, and transfer policies, the Court observed: "To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case." *Id.*, 461 U.S. at 143, 103 S.Ct. at 1688. Potter similarly addressed issues of a transfer, office morale, and internal office policies that were not of any "political, social, or other concern to the community." *Id.*, 461 U.S. at 146, 103 S.Ct. at 1689.

Courts will focus on whether the employee's role in advancing the speech was "that of a concerned public citizen, informing the public that the state institution is not properly discharging its duties, or engaged in some way in misfeasance, malfeasance or nonfeasance; or merely as an employee, concerned only with internal policies or practices which are of relevance only to the employees of that institution." *Cox v. Dardanelle Public School District*, 790 F.2d 668 (8th Cir.1986). Plaintiff draws an analogy between *Cox* and the instant case, and the *Cox* decision is troublesome to the Court. But while the Eighth Circuit mentioned morale problems in the *Cox* opinion, the genesis of the dispute in that case and the crux of the employee's speech centered on educational policy and theory, not personnel disputes as in the case at bar. As the Court ruled in determining that a teacher's expression on substantive educational policy at a school was of public concern, "Cox's speech was composed of more than criticisms of internal personnel policies, but touched on matters of public concern, and was therefore entitled to constitutional protection.... The very first dispute between Cox and Dillard (the principal) related to the District's decision to abandon ability grouping of students." *Id.* at 672. The Court stressed the great public importance inherent in the educational theories and practices employed by school officials: "The questions how we teach the young, what we teach them, and the environment in which we teach them are of the most central concern to every community in the nation." *Id.* (citing *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), and *Board of Education v. Pico*, 457 U.S. 853, 102 S.Ct. 2799, 73 L.Ed.2d 435 (1982).

Morale was one among several issues mentioned by the court in *Cox*, but the strong emphasis was on Cox's substantive ideas about teaching and not upon any personal concerns: "[The school principal's] administrative style had discouraged teacher input, inhibited teachers' use of different teaching techniques and classroom methods, significantly affected teacher morale at the school, and affected the students. Cox's statements on these matters were not the comments of a

single employee bearing on issues unique to that employee." *Cox*, at 673. Cox's speech contrasts sharply with Potter's focus on his conflict with Commissioner Perry Mikles and others among his supervisors; as the court stressed in *Cox*, "Nor were her comments concerned solely with the immediate supervisor-employee relationship between Dillard and the faculty. They obviously touch in great measure upon the ability of Dillard and the faculty to discharge ... the public function of education." *Id.* The heart of Cox's expression was substantive discussion of educational policy. The essence of Potter's speech focused on personal quarrels between the plaintiff and his close friend David Herman on one side and the supervisors on the other.[1] Potter's complaints were not essentially addressing the substantive public policies of a state agency and "informing the public that the state institution was not properly discharging its duties." Rather, he was waging a battle entirely within the inner realm of the Game & Fish Commission.

Plaintiff also attempts to rely on dictum in a footnote of *Cox* comparing the discussion of the morale issue in both the majority opinion and Justice Brennan's dissent in *Connick*. The *Cox* court quoted Justice Brennan's dissent: " 'It is beyond doubt that personnel decisions that adversely affect discipline and morale may ultimately impair an agency's efficient performance of its duties,' and comment on these decisions, therefore, is a matter of public concern as 'of interest to persons seeking to develop informed opinions about the manner in which ... an ... official charged with managing a vital governmental agency discharges his responsibilities.' " *Cox*, at 673 n. 7, citing *Connick*, 461 U.S. at 163, 103 S.Ct. at 1698 (Brennan, J., dissenting). This reliance on Justice Brennan's dis-

sent fails to strengthen plaintiff's case. The majority in *Connick* stressed that "The dissent's analysis of whether discussions of office morale and discipline could be matters of public concern is beside the point—it does not answer whether *this* questionnaire is such speech." *Connick*, 461 U.S. at 148–149 n. 8, 103 S.Ct. at 1690–1692 n. 8. Moreover, the footnote in *Cox* expressed a highly restricted interpretation of the import of morale issues: "The Court in *Connick* did not hold that criticism of the way in which one's superior administers the office or institution is *always solely* a question of internal concern." *Cox*, at 673 n. 7 (emphasis added). In *Cox*, the court observed that the majority in *Connick* disagreed with Brennan's opinion only in the factual context of *Connick*—expression concerning "internal policies relating to transfers and office morale, distributed by an employee transferred against her wishes." *Id.* Potter's speech, as noted above, involved a similar context on the questions of morale and an unwanted transfer.

In *Connick's* progeny that squarely addressed office morale issues, courts have routinely held that morale does not involve a matter of public concern. *See e.g., Evans v. City of Indianola*, 778 F.Supp. 333, 338 (N.D. Mississippi, 1991); *aff'd* 981 F.2d 1255 (5th Cir.1992). The *Evans* court held that plaintiff "testified in his deposition that he was concerned with numerous officers' complaints to him of low morale. The court finds that [plaintiffs] Lee and Harris spoke primarily as employees rather than as citizens." *Evans* at 338. The *Evans* court thus granted defendant's motion for summary judgment because the speech was not a matter of public concern. Similarly, in *Saraceno v. City of Utica*, 733 F.Supp. 538, 542 (N.D., New York,

---

1. Plaintiff relates that Herman had earlier been sued on a charge of sexual harassment by Julie Roberson, a third Arkansas Game & Fish Commission employee. This suit was settled. Potter states that his supervisors wanted him to give Herman lower job evaluations because of Roberson's allegations of sexual harassment against Herman. Even assuming this is true, this is not relevant to the issues in this case. Sexual harassment, of course, was not an issue in Potter's case. Potter's interest in this matter was the personal one of defending his close friend, Herman, from criticisms on the job. Indeed, the personal relationship between Herman and Potter was so close that Herman had earlier requested a transfer to Potter's district where he would be under Potter's supervision, and Potter had originally requested his transfer to Carroll County several years earlier at least in part in order to be near Herman. Above all, plaintiff never demonstrated that his defense of Herman in their personal dispute with Commissioner Perry Mikles and other supervisors involved any issues of political, social or other concern to the community.

1990), the court granted the portion of a summary judgment motion that dealt with a letter written by government employees to a Board of Commissioners that complained of low employee morale—"the letter did not touch upon matters of public concern."

Plaintiff repeatedly urges upon the court the conclusions of the Wildlife Management Institute in a report analyzing the functioning of the Commission. Assuming that this report is relevant and does accurately convey a picture of serious morale problems within the Commission, it still does not make Potter's speech protected, for as discussed, supra, courts have generally concluded that morale problems, without more, ordinarily do not constitute a matter of public concern.

Potter's speech was clearly much further removed from any matters of public concern than even Sheila Myers' expression in *Connick*, for one of the 12 questions in Myers' survey did relate to a question of strong public interest. The Supreme Court concluded that in contrast to the issues in Myers' questionnaire that did address morale and internal office matters, "One question in Myers' questionnaire, however, does touch upon a matter of public concern. Question 11 inquires if assistant district attorneys 'ever feel pressured to work in political campaigns on behalf of office supported candidates.'" *Connick*, 461 U.S. at 149, 103 S.Ct. at 1691. Pressure to work on a political campaign "is a matter of interest to the community upon which it is essential that public employees be able to speak out freely without fear of retaliatory dismissal." *Id.* Thus, at least a small portion of Myers' speech (one of 12 questions) did touch upon a matter of public concern, and the Supreme Court explained that, "Because one of the questions in Myers' survey touched upon a matter of public concern and contributed to her discharge, we must determine whether Connick was justified in discharging Myers." *Connick*, 461 U.S. at 149, 103 S.Ct. at 1691. The speech thus survived the threshold issue of dealing with a public concern—albeit, as the Court stressed, "in only a most limited sense"—and then the Court had to advance to the second stage of the judicial inquiry: the balancing of the employee's interest in speech against the government's interest in its efficient fulfillment of its public responsibilities. *Id.*, 461 U.S. at 150, 103 S.Ct. at 1692. In contrast, Potter's speech never clears the hurdle of the threshold "matter of public concern." His expression displayed the Myers' questionnaire characteristics concerning internal office matters, yet his speech did not involve any issues comparable to pressures about holding particular political positions. Assuming *arguendo* that Potter's factual allegations are true, the public would have little interest that a commissioner wanted Potter's friend fired, that the Wildlife Officer of the Year award appeared to be meaningless, or that his criticisms of low morale in the agency led to his subpar job evaluations. Even assuming that Potter was treated unfairly, such treatment still does not rise to the level of a constitutional issue.

## V. *Conclusion*

After hearing the parties in oral argument and examining the pleadings, attached exhibits and briefs of the parties, the court concludes that there are no genuine issues of material fact. This case is decided by the legal determination that Potter's speech is not a matter of public concern and hence is not protected by the First Amendment. Because Potter cannot meet the threshold requirement that the speech addressed an issue of public concern, it is not necessary to discuss the second step of the judicial inquiry. The speech was ultimately that of a disappointed employee, and his complaints concerning morale and internal policies within the Game & Fish Commission were based upon his concern that these matters were affecting his own job performance appraisals. The content, form and context of his expression all indicate that he was speaking as an employee and not a concerned citizen. Defendant's motion for summary judgment is hereby granted.

IT IS SO ORDERED.