Susan GRAZIOSI, Plaintiff

v.

CITY OF GREENVILLE, Chief Freddie Cannon, Defendants.

No. 4:12–CV–68–MPM–DAS.

United States District Court, N.D. Mississippi, Greenville Division.

Dec. 3, 2013.

**810**

J. Brad Pigott, Pigott Reeves Johnson & Minor, PA, Jackson, MS, for Plaintiff.

Gary E. Friedman, Jason Thomas Marsh, Phelps Dunbar LLP, Jackson, MS, for Defendants.

## ORDER

MICHAEL P. MILLS, Chief Judge.

This cause comes before the court on the motions of both the plaintiff and the defendants for summary judgment, pursuant to Fed.R.Civ.P. 56. Each party has responded in opposition to the respective motions, and the court, having considered the memoranda and submissions of the parties, is prepared to rule. For the reasons stated below, defendants' motion for summary judgment is granted.

This is a First Amendment retaliation case in which plaintiff alleges that she was wrongly discharged from her position as a Sergeant of the Greenville Police Department (GPD) because of comments she made on Facebook.

The plaintiff, Susan Graziosi, served as a police officer of the GPD for twenty-six years, until her termination in May of 2012. Defendant, Freddie Cannon, worked with Ms. Graziosi for twenty-one years, both before and after he became Chief of the Police Department.

Facebook claims to enable "fast, easy, and rich communication."[1] However, with fast and easy communication comes the inherent risk of "posting" statements and pictures one would not normally tell or show off to their "friends" and even, sometimes, to the general public. On May 7, 2012[2], plaintiff published a "status update" on Facebook and then later posted the statement on Mayor Chuck Jordan's[3] Facebook page that read:

---

1. The court does not adopt Facebook's self-serving assertion that they enable "rich" communication. Brief of Facebook, Inc. as Amicus Curiae in Support of Plaintiff–Appellant *Daniel Ray Cater, Jr. and in Support of Vacatur, Bobby Bland, Daniel Ray Carter, Jr., David W. Dixon, Robert W. McCoy, John C. Sandhofer, and Debra H. Woodward v. B.J. Roberts.*, 730 F.3d 368 (4th Cir.2013) (No. 12–1671), 2012 WL 3191379.

2. The original statement was posted to Facebook at or about 9:41 P.M., when Graziosi was not on duty and was using her personal computer.

3. Chuck Jordan is no longer the Mayor of Greenville, MS and is not a party in this action.

I just found out that Greenville Police Department did not send a representative to the funeral of Pearl Police Officer Mike Walter, who was killed in the line of duty on May 1, 2012. This is totally unacceptable. I don't want to hear about the price of gas-officers would have gladly paid for and driven their own vehicles had we known the city was in such dire straights (*sic*) as to not to be able to afford a trip to Pearl, Ms., which, by the way, is where our police academy is located. The last I heard was the chief was telling the assistant chief about getting a group of officers to go to the funeral. Dear Mayor, can we please get a leader that understands that a department sends officers of (*sic*) the funeral of an officer killed in the line of duty? Thank you. Susan Graziosi

Ms. Graziosi posted in response to "comments" made by other members of Facebook that "I'm mad. (can you tell)." Further, when others criticized the Greenville Police Department she wrote (around fourteen hours after her original posting):

> ... we had somethings (*sic*) then that we no longer have.... LEADERS. I don't know that trying for 28 is worth it. In fact, I am amazed everytime I walk into the door. The thing is the chief was discussing sending officers on Wednesday (after he suspended me but before the meeting was over). If he suddenly decided we "couldn't afford the gas" (how absurd—I would be embarrassed as a chief to make that statement) he should have let us know so we could have gone ourselves. Also, you'll

be happy to know that I will no longer use restraint when voicing my opinion on things. Ha!

Later on May 7, 2012, Ms. Graziosi made an additional post which stated "If you don't want to lead, can you just get the hell out of the way" and then commented on her own post "seriously, if you don't want to lead, just go."

Plaintiff argues that her statements on Facebook did not address or concern any ongoing internal policy or practice of the GPD. However, it is evident that her post could be construed as an attack on Chief Cannon, and the other officers who were in charge now compared to the "leaders" of before.[4]

It is clear from the record that Chief Cannon terminated Graziosi due to the statements she made on Facebook and had contemplated the decision to terminate her prior to talking with anyone else in the GPD or counsel.[5]

Upon learning of Graziosi's statements, Chief Cannon first approached Mayor Jordan to make him aware of the postings. Further, Cannon met with Mr. Andy Alexander, the city attorney, to express his concerns that the postings were unacceptable and that he "was concerned about me leading the department with her posting this type of information on the Facebook page. I expressed to Andy that I was very concerned that she would post something like this on the Facebook page." Chief Cannon told Mr. Alexander he was going to recommend termination for Ms. Graziosi, and he "stated something to the

---

4. Unlike the recent Fifth Circuit decision in *Gibson*, Graziosi had a chain of command she could have used to raise her concerns about the Chief's decision. (Gibson, the chief law enforcement officer, arguably had no one else to whom he could report misconduct by the Mayor without endangering the subsequent investigation).

5. Cannon testified he "had other information ... a prior suspension" and the totality of the termination was not just the particular page. Further, Graziosi had previously stormed into dispatch using profane language and calling Cannon an idiot for a decision concerning the closing of nightclubs and also complained about transporting prisoners.

effect that, 'You're the chief. If you feel like that's what you need to do, then you can do it.'" Although Chief Cannon did not ask the city attorney in particular about the First Amendment or a written policy in the city's manual, he did seek his opinion as to Graziosi's termination.[6]

Chief Cannon also instructed two Internal Affairs Division officers to investigate Graziosi's Facebook posting. The Internal Affairs officers, Misty Litton and Brian Payne, interviewed Graziosi and conducted their investigation before giving a written report to Chief Cannon that outlined the reasons for termination.

Plaintiff was notified her employment was terminated for her violation of the Greenville Police Department's Policy and Procedure Manual, and in particular: Rules of Conduct 2.14 subsection 3.2 (Supporting Fellow Employees) (Employees will cooperate, support, and assist each other at every opportunity. Employees will not maliciously criticize the work or manner of performance of another. It is the duty of every officer and employee to refrain from originating or circulating any malicious gossip to the intended detriment of the department or any member thereof); Discipline & Accountability (3.8 page 6 of 7 # 2(c)) (Chronic complaining about operations to the extent that supervisors must spend an excessive amount of time dealing with problems or issues caused by complaints); and Insubordination (3.7) (Any act of defiance, disobedience, dissension or resistance to authority).[7] Graziosi argued on appeal before the City Council that she did not act with malice but rather expressed a difference of opinion with the Chief; that she made other comments to staff members or other officers but was only expressing her opinion; to resist authority a member of staff would have had to give a directive; and that asking questions is not complaining. The City Council upheld the termination.

■ Government employees are not stripped of their right to freedom of expression by virtue of their employment. *Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). This right is not absolute, though, and whether the speech of a public employee is entitled to constitutional protection is analyzed under a four-prong test. In order to prevail on a First Amendment retaliation claim, a public employee plaintiff must establish that: (1) she suffered an adverse employment decision; (2) her speech involved a matter of public concern; (3) her interest in speaking outweighed the governmental defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct. *Gibson v. Kilpatrick,* 734 F.3d 395 (5th Cir.2013) (internal citations omitted). If the employee establishes those four elements, "the burden shifts to defendants to show by a preponderance of the evidence that they would have come to the same conclusion in the absence of the protected conduct." *Beattie v. Madison Co. Sch. Dist.,* 254 F.3d 595, 601 (5th Cir.2001), *applying Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 285, 97 S.Ct. 568, 50 L.Ed.2d 471

---

6. Mr. Alexander testified that he later told Chief Cannon "Freddie, I've looked at this and police officers do have First Amendment rights but they're not absolutely. There are— it is—as we always say, it depends on the facts ... if you honestly believe that this speech is undermining you ... is causing disunity ... I think you have the authority to do that, to terminate."

7. Graziosi had prior suspensions from the GPD, including just before her termination, but otherwise appears to have high remarks during her employment.

(1977). If public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline. *Garcetti v. Ceballos,* 547 U.S. 410, 418, 126 S.Ct. 1951, 1958, 164 L.Ed.2d 689 (2006). While the court must consider factual circumstances to determine whether speech is official, the determination is still a question of law. *Charles v. Grief,* 522 F.3d 508, 513 n. 17 (5th Cir.2008).

■ If a court determines that an employee is not speaking in their role as an employee, but rather as a citizen on a matter of public concern, "the possibility of a First Amendment claim arises." *Garcetti,* 126 S.Ct. at 1958. To determine whether the First Amendment protects the employee's speech, a court proceeds to the balancing test established by the Supreme Court in *Pickering v. Bd. of Educ.* The *Pickering* test inquires whether the interest of the government employer "in promoting the efficiency of the public services it performs through its employees" outweighs the employee's interests, as a citizen, "in commenting upon matters of public concern." *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731.

■ Whether Graziosi spoke as a citizen on a matter of public concern requires two separate questions: (1) was the subject of her speech a matter of public concern and (2) did she speak as a citizen rather than an employee. The court must answer, as a matter of law, if the speech addresses a matter of public concern after examining the "content, form, and context of a given statement, as revealed by the whole record." *Connick,* at 147–48 & n. 7, 103 S.Ct. 1684.

■ Graziosi's comments to the Mayor, although on a sensitive subject, were more related to her own frustration of Chief Cannon's decision not to send officers to the funeral and were not made to expose unlawful conduct within the Greenville Police Department.[8] Her posts were not intended to help the public actually evaluate the performance of the GPD. *See Shepherd v. McGee,* 986 F.Supp.2d 1211, 2013 WL 5963076 (D.Or. Nov. 7, 2013) (internal cites omitted). Further, Graziosi's posting was not related to any official duty she had as a police officer, but was made as an employee of the GPD and not a citizen of the Greenville community.

Plaintiff argues in briefing that the content of her statement leaves no doubt "that the issue of whether Greenville's municipal funds should have been spent to have an officially-sanctioned police representative attend on behalf of Greenville the funeral, was in its inherent nature a concern about the community." The court disagrees that the statement was concentrated on the municipal funds being used. Rather, the statement was questioning the leadership of the police chief[9] due to her frustration with recent decisions he had made and it was made from her perspective as a disgruntled police officer, not a concerned citizen.

The Fifth Circuit explained in *Terrell* that "[b]ecause almost anything that occurs within a public agency could be of concern to the public, we do not focus on the inherent interest or importance of the matters discussed by the employee. Rath-

---

8. The court is aware that Facebook, Twitter, and the like seem to have a "special" power to bring an issue before the masses, especially when a story goes viral, and is on a sensitive subject such as the funeral of a fellow officer.

9. Chief Cannon was a peer of Sgt. Graziosi before he became the chief.

er, our task is to decide whether the speech at issue in a particular case was made primarily in the plaintiff's role as citizen or primarily in his role as employee. In making this determination, the mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment." *Terrell v. Univ. of Texas Sys. Police,* 792 F.2d 1360, 1362 (5th Cir.1986) (internal cites omitted); *See also Evans v. City of Indianola, Mississippi,* 778 F.Supp. 333, 337 (N.D.Miss.1991) (quoting, in part, *Terrell,* 792 F.2d at 1362)).

"A test that allows a First Amendment retaliation claim to proceed whenever the government employee can identify a civilian analogue for his speech is about as useful as a mosquito net made of chicken wire: [a]ll official speech, viewed at a sufficient level of abstraction, has a civilian analogue." *Gibson v. Kilpatrick,* 734 F.3d 395 (5th Cir.2013) (citing *Bowie v. Maddox,* 653 F.3d 45, 48 (D.C.Cir.2011) (citations omitted) (criticizing the Second Circuit decision of *Jackler v. Byrne* for crafting an exception to *Garcetti's* stated rule).

 In her posts, Graziosi speaks as an employee and uses words such as "we" and "our" to identify herself as a member of the Greenville Police Department. She also writes about the particular things the chief said regarding the funeral issue and her being amazed "everytime (*sic* ) I walk into the door [of the police department]." "[A] public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run." *Ferrara v. Mills,* 781 F.2d 1508, 1516 (11th Cir.1986). Ms. Graziosi did not speak out about any issue that related to the public safety or trust they had in the

GPD but rather an internal decision of the department.

 Even if Graziosi had spoken as citizen on a matter of public concern, the court now analyzes whether the Greenville Police Department, and in particular, Chief Cannon, had reason to fire her in order to promote the efficiency of the services of the police department, and if that outweighs Graziosi's interests as a citizen in commenting upon matter of public concern. "The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Garcetti,* at 418, 126 S.Ct. 1951 (internal cite omitted).

Not all criticism of a police chief in a public forum is *per se* disruptive. However as Officer Nettles testified, there was in fact a disruption at the department and he heard the "buzz" around the department. If individual officers, working different shifts, knew of such buzz, it is only logical that Chief Cannon knew that the comments were disrupting his leadership in the office and should be addressed. Further, Ms. Graziosi's limited First Amendment interest does not require Chief Cannon to "tolerate action which he reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships." *Connick,* 461 U.S. at 154, 103 S.Ct. 1684. "[G]overnment offices could not function if every employment decision became a constitutional matter." *Id.* at 143, 103 S.Ct. 1684.

Officer Nettles, who commented on Graziosi's post with "Amen Sarge!," and Officer Andy Osborn of the GPD changed their demeanor towards Chief Cannon after Graziosi made her Facebook posts and was fired.[10] Officer Nettles later testified at his deposition that he clarified his Face-

---

10. According to Chief Cannon's testimony.

book comment the next day after hearing "buzz around the department at the time that someone had gotten upset by [his] comment."

Plaintiff's argument that a funeral "was of a kind not likely to re-occur in any predictable manner at any time in the future" and therefore the Facebook post did not present a reason to discuss the funeral or the Chief's decisions except in a limited short time after the posting is not well taken. The officers may not have discussed the actual funeral after the "day or week the Facebook post occurred" but the criticism of Chief Cannon had the ability to divide the department, or at least be a disruption to his leadership ability.

 The ability of a police department to maintain discipline and good working relationships amongst employees is a legitimate governmental interest. *Gresham v. City of Atlanta,* 542 Fed.Appx. 817, 2013 WL 5645316 (11th Cir. Oct. 17, 2013); *See Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987) (recognizing that whether a plaintiff's speech "impairs discipline by superiors or harmony among co-workers, [or] has a detrimental impact on close working relationships" is an important factor in the *Pickering* balance). In addition, police departments function as paramilitary organizations charged with maintaining public safety and order, and are given more latitude in their decisions regarding discipline and personnel regulations than an ordinary government employer. *See Nixon v.*

*City of Houston,* 511 F.3d 494, 498 (5th Cir.2007).

The cases relied upon in plaintiff's motion for summary judgment, *Forsyth v. City of Dallas* and *Brawner v. City of Richardson,* each deal with published statements that accuse the police department of misconduct (wiretapping and maintaining files about non-criminal matters). "[A]lthough the working relationship of the parties is damaged, this exigency pales before the need of the public to know of the malfeasance involved, and the right of the (plaintiff officer) to make it known both for his own protection and as his duty as a servant to the people." *Williams v. Board of Regents of the University of Georgia,* 629 F.2d 993 at 1004, n. 19 (Former 5th Cir.1980) (*Pickering* defenses were unavailable as a matter of law). However, a decision not to pay for gasoline needed to send officers to a funeral should not be considered "malfeasance" in the same fashion as the facts enunciated in *Williams* (a police chief ordered part of a vehicle accident report to be removed when the accident had been caused by the intoxication of a senior police official).

The Greenville Police Department's internal decision not to pay the costs associated with paying for fuel to attend a funeral may have been a paramount concern to the citizens, especially those who are supporters of law enforcement, but as a matter of law, Graziosi's venting on Facebook does not enjoy First Amendment protection.[11]

---

**11.** Assuming that defendant did violate plaintiff's right, he would have the benefit of the qualified immunity defense.

Chief Cannon made the ultimate decision to terminate Ms. Graziosi after talking to the city attorney and having the Internal Affairs Division conduct an investigation. This was not a snap decision in clear violation of established law. Therefore, Chief Cannon would be entitled to qualified immunity regardless of the

determination of Ms. Graziosi's First Amendment claim on summary judgment. Chief Cannon relied upon the advice of the city attorney which, if anything at all, led him to believe his firing of Graziosi was appropriate. Social media speech and the First Amendment rights of employees are steadily evolving. The First Amendment right to free speech however was clearly established long

Therefore, plaintiff's motion for partial summary judgment as to liability [Doc. 59] is DENIED and defendants' motion for summary judgment [Doc. 55] is GRANTED. Accordingly, a separate order shall be issued pursuant to Fed.R.Civ.P. 58.

before Facebook and its ilk came into common usage.