# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2204

_____

| | | |
|---|---|---|
| Rebecca Wildman, a minor, | ) | |
| by her mother and Next Friend; | ) | |
| Denise Wildman, | ) | |
| | ) | |
| Plaintiffs - Appellants, | ) | |
| | ) | Appeal from the United States |
| v. | ) | District Court for the |
| | ) | Southern District of Iowa. |
| Marshalltown School District; | ) | |
| Chris Rowles; Jerry Stephens; | ) | |
| George Funk, | ) | |
| | ) | |
| Defendants - Appellees. | ) | |

_____

Submitted: February 15, 2001
Filed: May 7, 2001

_____

Before WOLLMAN, Chief Judge, BRIGHT, and MORRIS SHEPPARD ARNOLD,
Circuit Judges.

_____

BRIGHT, Circuit Judge.

Rebecca Wildman appeals from the district court's[1] summary judgment dismissal
of her action. Wildman filed this action under 42 U.S.C. § 1983 and § 1988 as a high

_____

[1] The Honorable Harold D. Vietor, United States District Judge for the Southern
District of Iowa.

school student against the school principal, school athletic director, varsity girls' basketball coach, as well as the school district, alleging that they violated her rights under the Free Speech Clause of the First Amendment when they conditioned her continued participation on the sophomore basketball team on her apologizing to her teammates for writing a letter which criticized the varsity coach. We affirm.

## I.     BACKGROUND

We take the facts in the light most favorable to Wildman. In January 1998, Wildman was a sophomore student at Marshalltown High School in Marshalltown, Iowa, and a member of the school's basketball team. Wildman hoped to play on the varsity team and she testified that Coach Rowles, the high school girls' varsity basketball coach, promised in conversations with her before the season that he would promote her to the varsity team. When the promotion never materialized, Wildman testified that she "became frustrated and decided to write a letter to [her] teammates" and that her "purpose was to find out what they thought of the situation and Coach Rowles." She composed a letter on her home computer and distributed it to her teammates in the school's locker room on Saturday, January 24, 1998. The letter stated:

> To all of my teammates:
> Everyone has done a great job this year and now is the time that we need to make ourselves stronger and pull together. It was a tough loss last night but we will get it back. We have had some bumps in the road to success but every team does and the time is here for us to smoothen it out. Everyone on this team is important whether they think so or not. After watching last nights [sic] Varsity game and seeing their sophomores play up I think and I think [sic] that some of you are think [sic] the same thing. I think that we have to fight for our position. Am I the only one who thinks that some of us should be playing Varsity or even JV? We as a team have to do something about this. I want to say something to Coach Rowles. I will not say anything to him without the whole teams

[sic] support. He needs us next year and the year after and what if we aren't there for him? It is time to give him back some of the bullshit that he has given us. We are a really great team and by the time we are seniors and we ALL have worked hard we are going to have an AWESOME season. We deserve better then [sic] what we have gotten. We now need to stand up for what we believe in!!!

J.A. at 44. She included below her statement a poem about geese in flight titled "We Makes Me Stronger."

The following week, Wildman's sophomore team coach received a telephone call from Charlotte Baltes, a parent of one of Wildman's teammates, who expressed concern about the letter her daughter brought home from the locker room. Coach Rowles received a copy of the letter from another player's parent, Diana Swanson, who worked as the attendance secretary at the high school. Both coaches, who stated in their depositions that they were alarmed by the letter's tone and language, met with athletic director Funk and principal Stephens to discuss how to handle the matter. On January 29, 1998, the coaches met with Wildman alone to discuss the letter with her. They told her the letter was disrespectful and demanded that she apologize to her teammates.[2] Wildman claims that they did not ask her to explain what she hoped to accomplish with her letter. She contends that she did not advocate a strike or boycott but that the school did not give her a chance to explain herself before setting the condition for her continued participation in the basketball program. The coaches gave her twenty-four hours to apologize, and, if she did not, she would not be allowed to return to the team. Wildman refused to apologize and did not practice with the team or play in the season's remaining six games. She also complains that she was not invited to attend the post-season awards banquet and that Coach Rowles declined to give her a participation

---

[2]Wildman claims that Coach Rowles also demanded that she apologize to him as a condition of her reinstatement to the team.

award because "she did not finish the season." Following the school year, Wildman and her family moved to another school district where she enrolled in high school.

On September 2, 1999, Wildman brought this suit for damages. On November 2, 1999, the defendants filed a motion for summary judgment. On April 6, 2000, the district court granted defendants' motion for summary judgment, holding that Wildman's letter materially interfered or substantially disrupted a school activity. The district court declined to exercise federal jurisdiction over Wildman's state statutory free speech claim and dismissed that claim without prejudice. Wildman appeals the summary judgment dismissal of her action.

II.    DISCUSSION

We review a grant of summary judgment de novo. See Mumford v. Godfried, 52 F.3d 756, 759 (8th Cir. 1995). The moving party is entitled to judgment as a matter of law when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

For reversal, Wildman argues that the First Amendment prevents the school from disciplining her for distributing a letter which was a personal communication to other students containing her personal expression. Both parties agree that, as the Supreme Court acknowledged in Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 506 (1969), students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Tinker involved an attempt by high school students to wear black armbands on school property to symbolize their protest against the Vietnam War. The Supreme Court struck down school authorities' efforts to discipline this expression of opinion (suspending the students from school until they would come back without their armbands) and stated that "undifferentiated fear or

apprehension of disturbance is not enough to overcome the right to freedom of expression." Tinker, 393 U.S. at 508.

However, this right to express opinions on school premises is not absolute. It is well within the parameters of school officials' authority to prohibit the public expression of vulgar and offensive comments and to teach civility and sensitivity in the expression of opinions. See Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 683 (1986) (sustaining the punishment of a student for a speech laden with sexual innuendos at a mandatory school assembly); Poling v. Murphy, 872 F.2d 757, 758 (6th Cir. 1989) (affirming the punishment of a student who insulted a vice principal during a speech at a mandatory school assembly).

Marshalltown had in place a handbook for student conduct in 1997-1998, as well as a Marshalltown Bobcat Basketball Handbook, drafted by Coach Rowles and distributed to Wildman and her teammates at the start of the season. Both handbooks indicated that disrespect and insubordination will result in disciplinary action at the coach's discretion. Appellees argue that they acted properly and lawfully in their reaction to Wildman's letter. They point to their interest in affording Wildman's teammates an educational environment conducive to learning team unity and sportsmanship and free from disruptions and distractions that could hurt or stray the cohesiveness of the team.

Wildman admits that her speech contained one profane word but contends that because there was no specific evidence of a material disruption of a school activity, her speech is protected. We disagree with the claim of protection.

The parties perhaps could have achieved with minimal creativity and flexibility a solution more amicable or less humiliating to the student. However, the school sanction only required an apology. The school did not interfere with Wildman's regular education. A difference exists between being in the classroom, which was not affected

-5-

here, and playing on an athletic team when the requirement is that the player only apologize to her teammates and her coach for circulating an insubordinate letter.[3] We agree with the district court's conclusions that the letter did suggest, at the least, that the team unite in defiance of the coach (where Wildman wrote that the coach "needs us next year and the year after and what if we aren't there for him?" and "[i]t is time to give him back some of the bullshit that he has given us" and "[w]e now need to stand up for what we believe in" and "I think that we have to fight for our position") and that the actions taken by the coaches in response were reasonable. Moreover, coaches deserve a modicum of respect from athletes, particularly in an academic setting.

This suit does not present a case like Seamons v. Snow, 206 F.3d 1021 (10th Cir. 2000), cited by Wildman for the proposition that dismissal of a high school player from an athletic team for refusing to apologize for the exercise of free speech rights amounts to an unconstitutional action. In that case, the Tenth Circuit Court of Appeals reversed the district court's summary judgment dismissal and remanded because of disputed issues of fact. The student athlete in Seamons asserted that the football coach asked the player to apologize to the football team for reporting to the police and to school authorities a hazing incident in which the player was assaulted in the high school locker room by a group of his teammates, forcibly restrained, and bound to a towel rack with adhesive athletic tape. Id. at 1027. The coach presented a different version, claiming that the player's ultimate failure to be involved with the football team was unrelated to his speech or refusal to speak. Id. The court determined that "[t]here [were] ample facts in the record to indicate that Brian's suspension and dismissal from the football team were directly related to his failure to apologize for reporting the assault." Seamons, 206 F.3d at 1028. Implicitly the court acknowledged that Brian's report of the assault was protected free expression.

---

[3]This unfortunate stalemate over the letter and her apology brings to mind the biblical Proverb: "Pride goeth before destruction, and an haughty spirit before a fall." *Proverbs* 16:18.

In contrast, Wildman's letter, containing the word "bullshit" in relation to other language in it and motivated by her disappointment at not playing on the varsity team, constitutes insubordinate speech toward her coaches. Here, in an athletic context void of the egregious conduct which spurred the football player's speech about the hazing incident in Seamons and where Wildman's speech called for an apology, no basis exists for a claim of a violation of free speech.

III.    CONCLUSION

Accordingly, we affirm the summary judgment of dismissal of Wildman's claim of alleged violation of her rights under the Free Speech Clause of the First Amendment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.