NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3982
_____

WILLIAM BLASI,
                                        Appellant
                    v.

PEN ARGYL AREA SCHOOL DISTRICT

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 10-cv-06814)
District Judge:  Honorable Lawrence F. Stengel

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 7, 2012
Before:  SMITH, CHAGARES and WEIS, Circuit Judges
(Opinion filed: January 30, 2013)
_____

OPINION
_____

PER CURIAM.

        William Blasi, acting as a *pro se* plaintiff in the District Court[1], is the father

of two sons whom he describes as being "of mixed race; part white and part ethnic

_____

[1] Plaintiff proceeded *pro se* but, as was established in the District Court during the
hearing on his motion for preliminary injunction, he has been a lawyer and he practiced
law for some years in New York.  Therefore, the usual tolerance given to the pleadings of
*pro se* litigants is not applicable to this case.

1

Chinese" and, at the time he initiated this litigation, 13 and 14 years of age. Alleging various violations of his own constitutional rights, plaintiff brought an action pursuant to 42 U.S.C. § 1983 seeking injunctive and declaratory relief against the Pen Argyl School District because of his dissatisfaction with the basketball program in which his sons participated. Plaintiff's complaint contains intimations of racial discrimination against his sons by school officials and by team mates but does not seek relief on that theory.

After a hearing, the District Court denied preliminary injunctive relief concluding the plaintiff was unlikely to prevail. The court then granted the School District's motion to dismiss and entered judgment in its favor. We will affirm.

In the fall of 2009, plaintiff's sons both chose to try out for the Pen Argyl Area School District's interscholastic basketball program and were accepted for teams. They and the plaintiff received a copy of the School District's Athletic Policies which included the "Parental/Spectator Guidelines." Among other things, the Guidelines advised parents of team members to refrain from "[r]idiculing or berating players, coaches, officials or other spectators." Plaintiff and his sons each signed a statement acknowledging that he had received and read the School District's Athletic Policies and agreeing to uphold "the standards therein" for the 2009-2010 school year.

From November 12 until December 23, 2009, plaintiff sent 17 e-mails to coaches complaining about their coaching methods, the behavior of his sons' team mates towards them, and alleged favoritism toward white, inferior players.

In a letter to the plaintiff dated December 22, 2009, the school principal stated that plaintiff had sent "scathing and threatening emails in which you berate and

2

harass our coaches and make degrading and deplorable comments about 7th and 8th grade players ….This conduct, as you know, is a violation of the Parent/Spectator Guidelines (see enclosure) which was given to you at a parent meeting prior to the start of the 09-10 season and which you and your children signed on 11-19-09 …."  The letter also called attention to that portion of the Guidelines warning that "[b]ehavior that degrades a player, coach, referee, school official or another parent or fan is subject to disciplinary action by school personnel."

As a sanction for his violation of the Guidelines, plaintiff was barred from attending the next home game, scheduled for January 8, 2010.  In response, among other things, plaintiff filed an action in the District Court alleging a variety of constitutional violations including the sanction against him.

We write principally for the parties, who are familiar with the factual context and legal history of this case.  Therefore, we have set forth only those facts necessary to our analysis.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  Our review is plenary.  See McMullen v. Maple Shade Twp., 643 F.3d 96, 98 (3d Cir. 2011).

Plaintiff's amended complaint listed six counts.  The third, fourth, fifth, and sixth counts essentially assert that his right to raise his children as he thinks best and/or his right to freedom of speech have been violated by the School District's policies regarding closed basketball practices/tryouts, the School District's game day dress code for members of the middle school basketball team, and the School District's decisions to cut one of his sons from the team and to not promote the other son to the PAASD basketball team.  The District Court ably explored those contentions in its detailed

memorandum opinion and we see no need to reiterate the court's discussion on those points.

The first and second counts of the complaint set forth plaintiff's charges that the School District violated his constitutional right to free speech both by sanctioning him for the e-mails criticizing his sons' coaches and team mates and by enacting a subsequent amendment of its Guidelines expressly extending the prohibition against degrading, ridiculing or berating coaches and players to the use of electronic media (internet/e-mail etc.). We find no merit in his claims.

School officials have comprehensive authority, consistent with fundamental constitutional safeguards, to maintain an environment suitable for academic and extra-curricular learning by all students. See Tinker v. Des Moines Independent Community Sch. Dist., 393 U.S. 503, 89 S.Ct. 733 (1969). There is no constitutionally protected right to play sports. See Angstadt v. Midd-West Sch. Dist., 377 F.3d 338, 344 n.2 (3d Cir. 2004).

The narrower goals of an athletic team differ from those of academic pursuits and are not always consistent with the freewheeling exchange of views that might be appropriate in a classroom debate. See, e.g., Lowery v. Euverard, 497 F.3d 584 (6th Cir. 2007). School officials have a legitimate interest in affording student athletes "an educational environment conducive to learning team unity and sportsmanship and free from disruptions that could hurt or stray the cohesiveness of the team." Wildman v. Marshalltown Sch. Dist., 249 F.3d 768, 771 (8th Cir. 2001).

In order to achieve an effective and efficient athletic program for the students who wish to play, school officials may properly condition participation with a greater limitation of constitutional rights, including the right to free speech, than might otherwise be permissible. See Tennessee Secondary School Athletic Association v. Brentwood Academy, 551 U.S. 291, 127 S.Ct. 2489 (2007) (restriction on speech in recruiting athletes); Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 115 S.Ct. 2386 (1995) (voluntary participants in school athletics have reason to expect intrusions upon normal rights and privileges).

In this instance, plaintiff's charges are made in the context of an athletic program in which his sons' participation, and by extension his own, is voluntary. Plaintiff was aware of and agreed to the standards required of students, and their parents, in order to participate in the School District's basketball program, including restrictions on the manner and tone of speech used with respect to coaches and other players. Although he makes an unsupported argument of non-applicability, the plaintiff acknowledges in his complaint that such restrictions were "drafted as a reasonable time, place, and manner regulation of speech."

The Guidelines and the challenged subsequent amendments are reasonably designed to enhance the educational and athletic experience of plaintiff's sons as well as that of other students participating in the program. The Guidelines do not preclude or prohibit criticism of coaches (or even other team members) but regulate the time, place, and manner in which such concerns are expressed in a way necessary to manage an effective and efficient basketball program. The policy permits the coach and players to

5

focus on the game when at hand, without distraction of competing views on the strategies and tactics best calculated to win.

"Athletic programs may … produce long-term benefits by distilling positive character traits in the players. However, the immediate goal of an athletic team is to win the game, and the coach determines how best to obtain that goal. … 'The plays and strategies are seldom up for debate. Execution of the coach's will is paramount.' " Lowery v. Euverard, 497 F3d. 584, 589 (6th Cir. 2007) (citation omitted).

The sanction upon plaintiff was imposed because, contrary to the Guidelines, he used incendiary language denigrating coaches and young players alike. In so doing, plaintiff not only violated his own agreement to refrain from using abusive language, he also jeopardized the interests of other participants in the athletic program.

Judgment of the District Court will be affirmed.